# NO. 22-1340, -1341

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### COREPHOTONICS, LTD.,
**Appellant**

**v.**

### APPLE INC.,
**Appellee**

### BRIEF OF APPELLEE APPLE INC.

**Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2020-00487 and IPR2020-00860**

### HAYNES AND BOONE, LLP

Debra J. McComas
Andrew S. Ehmke
2323 Victory Avenue
Suite 700
Dallas, Texas 75219
Phone: (214) 651-5375
Fax: (214) 200-0525

David W. O'Brien
Hong Shi
600 Congress Avenue
Suite 1300
Austin, Texas 78701
Phone: (512) 867-8457
Fax: (512) 867-8613

Angela M. Oliver
800 17th Street, NW
Suite 500
Washington, D.C. 20006
Phone: (202) 654-4552
Fax: (202) 654-4252

**Attorneys for Appellee Apple Inc.**

**Patent No. 9,661,233 (IPR2020-00487) (Appx161)**

1. A multiple aperture zoom digital camera, comprising:
   a) a Wide imaging section that includes a Wide sensor and a fixed focal length Wide lens with a Wide field of view (POV), the Wide imaging section operative to output a Wide image;
   b) a Tele imaging section that includes a Tele sensor and a fixed focal length Tele lens with a Tele POV that is narrower than the Wide POV, the Tele imaging section operative to output a Tele image; and
   c) a camera controller operatively coupled to the Wide and Tele imaging sections and configured to reduce an image jump effect seen in video output images and to provide continuous zoom video output images by executing registration between the Wide and Tele images for performing position matching to the video output images when switching from an output of the Tele imaging section to an output of the Wide imaging section or vice versa.

**Patent No. 10,326,942 (IPR2020-00860) (Appx181)**

1. A multiple aperture zoom digital camera, comprising:
   a) a Wide imaging section that includes a Wide sensor and a fixed focal length Wide lens with a Wide field of view (FOV), the Wide imaging section operative to output a Wide image;
   b) a Tele imaging section that includes a Tele sensor and a fixed focal length Tele lens with a Tele FOV that is narrower than the Wide FOV, the Tele imaging section operative to output a Tele image; and
   c) a camera controller operatively coupled to the Wide and Tele imaging sections and configured, when providing video output images, to:
      reduce an image jump effect seen in the video output images when switching from a Wide image to a Tele image by shifting the Tele image relative to the Wide image according to a distance of an object in a Tele image region of interest (ROI), and/or
      reduce an image jump effect seen in the video output images when switching from a Tele image to a Wide image by shifting the Wide image relative to the Tele image according to a distance of an object in a Wide image ROI.

# CERTIFICATE OF INTEREST

|  |  |
|---|---|
| **Case Number** | 22-1340, -1341 |
| **Short Case Caption** | Corephotonics, Ltd. v. Apple Inc. |
| **Filing Party/Entity** | Apple Inc. / Appellee |

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: <u>October 3, 2022</u>          Signature: <u>*/s/ Debra J. McComas*</u>

          Name: <u>Debra J. McComas</u>

| 1. Represented Entities.<br>Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest.<br>Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders.<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| __ None/Not Applicable | X None/Not Applicable | X None/Not Applicable |
| Apple Inc. | | |
| | | |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

__ None/Not Applicable                                    __ Additional pages attached

| Michael S. Parsons (Haynes and Boone, LLP) | Stephanie N. Sivinski (Haynes and Boone, LLP) | Jordan Maucotel (Haynes and Boone, LLP) |
|---|---|---|
|  |  |  |
|  |  |  |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

__ None/Not Applicable                                    __ Additional pages attached

| Corephotonics, Ltd. v. Apple Inc., 5:19-cv-04809 (N.D. Cal.) |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

 X  None/Not Applicable                                    __ Additional pages attached

|  |  |  |
|---|---|---|

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .............................................................. iii

TABLE OF CONTENTS.......................................................................v

TABLE OF AUTHORITIES ................................................................ vii

STATEMENT OF RELATED CASES....................................................1

JURISDICTIONAL STATEMENT .......................................................2

STATEMENT OF THE ISSUES............................................................3

INTRODUCTION ................................................................................4

STATEMENT OF THE CASE...............................................................7

      A.     The Technology..........................................................8

           1.     The '233 Patent and '942 Patent................................8

           2.     Golan .....................................................................12

           3.     Martin ....................................................................13

      B.     The IPRs ...................................................................15

      C.     The Board's Decisions .................................................17

SUMMARY OF THE ARGUMENT ....................................................18

ARGUMENT ....................................................................................20

I.     Standard of Review.......................................................................20

II.    Substantial evidence supports the finding that Golan and Martin are analogous art. ........................................................................23

      A.     Analogous art is part of the obviousness analysis rather than an independent inquiry. ..............................................23

      B.     Substantial evidence supports the Board's finding that Golan and Martin are analogous art to the patents..............26

C.  The Board acted within its discretion in considering Apple's reply arguments and evidence. ...............................32

D.  Corephotonics cannot claim a lack of notice of reply arguments because it failed to exhaust all remedies. ..........39

E.  The Board did not articulate a new theory of obviousness in the Final Written Decisions...............................41

    1.  The field of endeavor never changed, and Golan fits within it. ...............................41

    2.  Martin is pertinent to the problem, which is clear from the Decisions. ...............................43

III.  The Board's finding that the "shifting" limitation in the '942 patent claims is rendered obvious by the prior art is supported by substantial evidence...............................48

A.  The Board's understanding of the "shifting" limitation does not require a calculation based on a transformation coefficient...............................57

B.  Neither Apple nor the Board relied on Martin's "depth map" to teach the "shifting" limitation. ...............................60

C.  Corephotonics' new argument regarding Kobayashi is forfeited and, in any event, unavailing...............................61

D.  Corephotonics' purported motivation arguments merely reiterate the same factual disputes...............................64

CONCLUSION...............................66

CERTIFICATE OF COMPLIANCE...............................68

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acceleration Bay, LLC v. Activision Blizzard Inc.*,
  908 F.3d 765 (Fed. Cir. 2018) ...................................................................22

*Agarwal v. TopGolf Int'l, Inc.*,
  813 F. App'x 476 (Fed. Cir. 2020) ............................................................41

*Airbus S.A.S. v. Firepass Corp.*,
  941 F.3d 1374 (Fed. Cir. 2019) ................................................................22

*AMC Multi-Cinema, Inc. v. Fall Line Patents, LLC*,
  No. 21-1051, 2021 WL 4470062 (Fed. Cir. Sept. 30, 2021)..............................34

*Anacor Pharms., Inc. v. Iancu*,
  889 F.3d 1372 (Fed. Cir. 2018) ................................................................32

*Apple Inc. v. Andrea Elecs. Corp.*,
  949 F.3d 697 (Fed. Cir. 2020) ............................................................22, 34

*Apple Inc. v. INVT SPE LLC*,
  851 F. App'x 200 (Fed. Cir. 2021) ...........................................................44

*Apple Inc. v. Qualcomm Inc.*,
  IPR2018-01245, Paper 39, 16 (PTAB Jan. 15, 2020) .................................38, 39

*Application of Antle*,
  444 F.2d 1168 (CCPA 1971) ..............................................................26, 35

*Arendi S.A.R.L. v. Apple Inc.*,
  832 F.3d 1355 (Fed. Cir. 2016) ................................................................21

*Belden Inc. v. Berk-Tek LLC*,
  805 F.3d 1064 (Fed. Cir. 2015) ......................................................22, 33, 40

*In re Bigio*,
  381 F.3d 1320 (Fed. Cir. 2004) ......................................................24, 27, 42

*Bilstad v. Wakalopulos*,
  386 F.3d 1116 (Fed. Cir. 2004) ................................................................21

*Chamberlain Grp., Inc. v. One World Techs., Inc.*,
    944 F.3d 919 (Fed. Cir. 2019) ............................................................34

*In re Clay*,
    966 F.2d 656 (Fed. Cir. 1992) ....................................................24, 29

*Cuozzo Speed Techs., LLC v. Lee*,
    579 U.S. 261 (2016)..........................................................18, 20, 23

*CyWee Group Ltd. v. Google LLC¸*
    847 F. App'x 910 (Fed. Cir. 2021) ....................................................30

*Dann v. Johnston¸*
    425 U.S. 219 (1976).........................................................................27

*Dell, Inc. v. Acceleron, LLC*,
    818 F.3d 1293 (Fed. Cir. 2016) ........................................................47

*Donner Tech., LLC v. Pro Stage Gear, LLC*,
    979 F.3d 1353 (Fed. Cir. 2020) ..........................................25, 26, 30, 31

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
    800 F.3d 1375 (Fed. Cir. 2015) ....................................................38, 39

*Ericsson Inc. v. Intellectual Ventures I LLC*,
    901 F.3d 1374 (Fed. Cir. 2018) ......................................22, 34, 38, 39

*Genzyme Therapeutic Prods. LP v. Biomarin Pharm. Inc.*,
    825 F.3d 1360 (Fed. Cir. 2016) ..........................................25, 26, 32

*Henny Penny Corp. v. Frymaster LLC*,
    938 F.3d 1324 (Fed. Cir. 2019) ....................................................22, 33

*Hylete LLC v. Hybrid Athletics, LLC*,
    931 F.3d 1170 (Fed. Cir. 2019) ........................................................63

*Infineum USA L.P. v. Chevron Oronite Co.*,
    No. 20-1333, 2022 WL 3147683 (Fed. Cir. Aug. 8, 2022) ..................32

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
    821 F.3d 1359 (Fed. Cir. 2016) ..........................................22, 32, 33

*In re IPR Licensing, Inc.*,
   942 F.3d 1363 (Fed. Cir. 2019) ..........................................................21

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) .................................................................... 6, 24

*Netlist, Inc. v. Diablo Techs., Inc.*,
   701 F. App'x 1001 (Fed. Cir. 2017) .................................................47

*Newell Cos. v. Kenney Mfg. Co.*,
   864 F.2d 757 (Fed. Cir. 1988) .........................................................22

*In re Nuvasive, Inc.*,
   841 F.3d 966 (Fed. Cir. 2016) .........................................................21

*In re Pagliaro*,
   657 F.2d 1219 (CCPA 1981) ...........................................................35

*Provisur Techs., Inc. v. Weber, Inc.*,
   No. 21-1942, — F.4th —, 2022 WL 4474941 (Fed. Cir. Sept. 27,
   2022) .............................................................................21, 22, 40

*Qualcomm Inc. v. Intel Corp.*,
   6 F.4th 1256 (Fed. Cir. 2021) .........................................................47

*Scientific Plastic Prods., Inc. v. Biotage AB*,
   766 F.3d 1355 (Fed. Cir. 2014) .......................................................30

*SIPCO, LLC v. Emerson Elec. Co.*,
   980 F.3d 865 (Fed. Cir. 2020) .........................................................22

*Sirona Dental Systems GmbH v. Institut Straumann AG*,
   892 F.3d 1349 (Fed. Cir. 2018) .......................................................41

*Thryv, Inc. v. Click-to-Call Techs., LP*,
   140 S. Ct. 1367 (2020) .................................................5, 18, 20, 23

*Uniloc 2017 LLC v. Facebook, Inc.*,
   No. 19-2162, 2021 WL 5370480 (Fed. Cir. Nov. 18, 2021) .......................34, 38

*Unwired Planet, LLC v. Google Inc.*,
   841 F.3d 995 (Fed. Cir. 2016) .........................................................36

*Valmont Indus., Inc. v. Lindsay Corp.*,
   730 F. App'x 918 (Fed. Cir. 2018) ...................................................23

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
   853 F.3d 1272 (Fed. Cir. 2017) ...........................................................33

*Wyers v. Master Lock Co.*,
   616 F.3d 1231 (Fed. Cir. 2010) ...........................................................25

## Statutes

35 U.S.C. § 312 .......................................................................................21

35 U.S.C. § 314 ...........................................................................18, 20, 23

35 U.S.C. § 325 .......................................................................................50

## Other Authorities

37 C.F.R. § 42.5 .....................................................................................40

37 C.F.R. § 42.23 ...................................................................................22

37 C.F.R. § 42.51 ...................................................................................40

37 C.F.R. § 42.64 ...................................................................................40

## STATEMENT OF RELATED CASES

No appeal in or from the same proceeding was previously before this Court of any other appellate court.

Counsel is aware that the following case may directly affect or be directly affected by this Court's decision in the pending appeal:

*Corephotonics, Ltd. v. Apple Inc.*, No. 3:19-cv-04809-JD (N.D. Cal.).

# JURISDICTIONAL STATEMENT

Apple does not dispute Corephotonics' Jurisdictional Statement.

## STATEMENT OF THE ISSUES

1. Corephotonics challenges whether Apple made a "*prima facie*" showing of analogous art to justify institution. Is Corephotonics' challenge to a threshold institution decision unreviewable under 35 U.S.C. § 314(d)?

2. Is analogous art determined as part of the same, flexible approach as the rest of the obviousness inquiry under *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007)?

3. Corephotonics accuses Apple of changing its analogous art positions in reply.

   a. Is Corephotonics foreclosed from challenging the scope of the reply brief by failing to exhaust its remedies before the Board?

   b. Alternatively, did the Board act within its discretion in finding that Apple's reply arguments and evidence were an appropriate response to arguments raised in the Patent Owner's Response?

   c. Did Corephotonics have adequate notice and opportunity to respond to the basis of the Board's determination that Golan and Martin are analogous art?

4. Does substantial evidence support the Board's determination that Golan and Martin are analogous art?

5. Does substantial evidence support the Board's finding that the combination of Golan and Martin renders obvious the "shifting according to a distance" limitation in the '942 patent claims?

## INTRODUCTION

This appeal arises from Final Written Decisions in two *inter partes* review proceedings finding all challenged claims unpatentable as obvious. Corephotonics' appeal hardly touches the findings supporting the Board's conclusion of obviousness. The claimed inventions disclose dual-aperture digital cameras using two imaging sections and addressing the common problem of "jump" or discontinuous image change when the camera switches the output between sub-cameras. Corephotonics does not dispute that a person of ordinary skill in the art ("POSITA") would have been motivated to reduce the effects of parallax (the disparate perspectives resulting from images with overlapping visual fields but different points of view) in Golan, or that Martin provides a description of a methodology for doing that. Nor does Corephotonics dispute that it would have been within the skill of a POSITA to implement Martin's methodology in Golan or that the combination would have yielded predictable results.

Instead, Corephotonics' appeal rests on the narrow premise that, despite Golan's and Martin's indisputable combined read on the claimed inventions, Apple was required (but allegedly failed) to make a "prerequisite" showing that Martin

and Golan are analogous art. On this narrow analogous art issue, not only is the substantial evidence indisputable that Golan and Martin are in the same field and address the same problem—aligning two images from two cameras when switching between them—but the claimed inventions of the Challenged Patents also fall within that same field and address that same problem. Even if Golan and Martin may teach switching for different contexts (Golan for continuous zoom and Martin for providing a 3D effect), they both lead a POSITA to the same teachings of the claimed inventions. Both references disclose dual cameras and aligning images when switching. Golan aligns by performing factory calibration and Martin aligns based on the images. And while Martin is not limited to two cameras, it addresses two cameras. Thus, substantial evidence supports the Board's finding that Golan and Martin are analogous art that render the challenged claims obvious.

In any event, Corephotonics' appeal on the ground of a prerequisite obligation to prove analogous prior art should be rejected out-of-hand; the decision to institute is not reviewable. *See Thryv, Inc. v. Click-to-Call Techs., LP*, 140 S. Ct. 1367, 1370-71 (2020). That leaves only two cognizable issues: (1) whether Corephotonics had adequate notice of the grounds supporting Apple's petition for *inter partes* review (which it did), and (2) whether substantial evidence supports the Board's finding of obviousness, including any underlying factual dispute regarding analogous art (which it does).

Corephotonics' attempts to dismiss the substantial evidence are meritless. Corephotonics excerpts only a few sentences from the briefing and Decisions to the exclusion of others and demands a showing that far exceeds the flexible approach of *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). To accept Corephotonics' arguments would be to accept that no art could ever be analogous unless it individually reads precisely on the patented invention. Corephotonics' approach would merge obviousness into anticipation, which is not what the law following *KSR* permits.

The burden on petitioner to show analogous art is no higher than the burden to show any other aspect of the obviousness analysis. That burden was met here, where the field of endeavor and pertinence of the prior art to the problem(s) faced by the inventor are repeated throughout the IPR proceeding, and the substantial evidence supports that both Martin and Golan fit into the field of endeavor and are pertinent to problem(s) faced by the inventor.

Corephotonics' remaining challenge to the Board's obviousness determination, which relates solely to the '942 patent, is a failed attempt to reweigh the substantial evidence cloaked in an incorrect accusation that the Board imposed an additional requirement by limiting "shifting according to a distance" to using a "transformation coefficient." The Board never imposed such a requirement, and

6

the substantial evidence fully supports the Board's findings that the prior art teaches the "shifting" limitation.

On this record, Corephotonics' technical and procedural arguments cannot overshadow the substantial evidence showing that the combination of Golan and Martin render the claimed invention obvious. The Final Written Decisions, therefore, should be affirmed.

## STATEMENT OF THE CASE

This appeal centers on two patents in the field of imaging systems, and specifically digital cameras using two imaging sections and addressing the common problem of "jump" or discontinuous image change when the camera switches the output between sub-cameras. Appx4 ('233 Decision), Appx64 ('942 Decision), Appx5410 (Durand Decl., "Durand"), ¶ 55. The techniques at issue allow a dual camera to provide "continuous zoom video mode output images . . . with a smooth transition when switching" between the two cameras. Appx145 ('233 patent), Abstract, Appx163 ('942 patent), Abstract. The Board found all challenged claims of the patents unpatentable as obvious.

The bulk of this appeal, however, does not center on the substance of the Board's obviousness findings. Corephotonics does not dispute that Apple's obviousness grounds disclose all limitations in U.S. Patent No. 9,661,233 ("'233 patent") and all but one limitation in U.S. Patent No. 10,326,942 ("'942 patent").

Instead, Corephotonics centers its appeal on procedural technicalities surrounding the Board's determination that Golan and Martin are analogous art. *See* CP Br. 34–50. The following Statement of the Case is limited to facts relevant to these narrow issues.

**A.    The Technology**

**1.    The '233 Patent and '942 Patent**

The '233 and '942 patents both concern a dual-aperture digital camera and a switch between the image output of two sub-cameras during zoom video. Appx145 ('233 patent),[1] Abstract, Appx5395–5400 (Durand), ¶¶ 25–31. The patents' summaries define the embodiments as teaching "the use of dual-aperture . . . optical zoom digital cameras." Appx156, 3:28–33.

Figure 1A, below, illustrates the claimed dual-aperture digital camera:

---

[1] The written descriptions of the two patents do not materially differ as they relate to the issues on appeal. *See* CP Br. 6. Accordingly, this overview section cites only the '233 patent's specification.

8



Appx147, Fig. 1A.

Although the specification (which mirrors that of earlier patents in the family) discusses these dual-aperture cameras operating in still mode by fusing images from the two sub-cameras, the claims of the '233 and '942 patents do not address still mode. *See* Appx156, 3:42–45. Instead, the claims relate solely to video mode, where zoom is achieved using "switching between the [wide] and [tele] images." Appx156, 3:49–54.

As the patents recognize, a common problem arises in switching between the camera outputs in dual-aperture camera operations. The patents explain that "[w]hen a dual-aperture camera switches the camera output between sub-cameras

or points of view, a user will normally see a 'jump' (discontinuous) image change." Appx159, 10:32–34. The patents purport to address this issue by employing a "smooth" transition between cameras or points of view (POV). Appx159, 10:36–38. This may include "matching the position, scale, brightness and color of the output image before and after the transition." Appx159, 10:38–40. The patents recognize, however, that "an entire image position matching between the sub-camera outputs is in many cases impossible, because parallax causes the position to shift to be dependent on the object distance," and an image may include objects at a variety of distances. Accordingly, the patents settle for position matching "only in the [region of interest] while scale brightness and color are matched for the entire output image area." Appx159, 10:40–46.

Representative claim 1 of the '233 patent is reproduced below:

1.    A multiple aperture zoom digital camera, comprising:

a) a Wide imaging section that includes a Wide sensor and a fixed focal length Wide lens with a Wide field of view (POV), the Wide imaging section operative to output a Wide image;

b) a Tele imaging section that includes a Tele sensor and a fixed focal length Tele lens with a Tele POV that is narrower than the Wide POV, the Tele imaging section operative to output a Tele image; and

c) a camera controller operatively coupled to the Wide and Tele imaging sections and configured to reduce an image jump effect seen in video output images and to provide continuous zoom video output images by executing registration between the Wide and Tele images for performing position matching to the video output images when switching from an

output of the Tele imaging section to an output of the Wide imaging section or vice versa.

Appx161, 13:17–35.

Representative claim 1 of the '942 patent claims:

1.    A multiple aperture zoom digital camera, comprising:

a) a Wide imaging section that includes a Wide sensor and a fixed focal length Wide lens with a Wide field of view (FOV), the Wide imaging section operative to output a Wide image;

b) a Tele imaging section that includes a Tele sensor and a fixed focal length Tele lens with a Tele FOV that is narrower than the Wide FOV, the Tele imaging section operative to output a Tele image; and

c) a camera controller operatively coupled to the Wide and Tele imaging sections and configured, when providing video output images, to:

   reduce an image jump effect seen in the video output images when switching from a Wide image to a Tele image by shifting the Tele image relative to the Wide image according to a distance of an object in a Tele image region of interest (ROI), and/or

   reduce an image jump effect seen in the video output images when switching from a Tele image to a Wide image by shifting the Wide image relative to the Tele image according to a distance of an object in a Wide image ROI.

Appx181, 13:22–44.

Like the claimed inventions, both Golan and Martin concern video output in imaging devices with solutions to assure continuous output while switching between images with different points of view.

### 2. Golan

Golan concerns video output in a dual-aperture imaging device with "continuous electronic zoom." Appx10 (citing Appx5517, Abstract), Appx1019 (Petition) (citing Appx5518, Fig. 1, Appx5404–5406 (Durand), ¶¶ 44–48); *see generally* Appx5517–5529. By providing "multiple imaging devices each with a different fixed field of view," Golan's systems "facilitate[] a lightweight electronic zoom with a large lossless zooming range." Appx10 (citing Appx5525, ¶ 9). Golan's Figure 1, below, illustrates a zoom control sub-system for an image acquisition system. Appx11 (citing Appx5526, ¶ 26).



*Fig 1*

Appx5518 (Fig. 1).

According to Golan, "[z]oom control sub-system 100 includes a tele image sensor 110 coupled with a narrow lens 120 having a predesigned FOV 140, a wide image sensor 112 coupled with a wide lens 122 having a predesigned FOV 142, a zoom control module 130 and an image sensor selector 150." Appx11 (citing Appx5526, ¶ 37). Zoom control module 130 selects an appropriate image sensor through image sensor selector 150 and calculates a camera zoom factor when it receives a required zoom from an operator. Appx11 (citing Appx5526, ¶ 39).

Golan's system "facilitates continuous electronic zoom capabilities with uninterrupted imaging, when switching back and forth between the first image sensor array and the second image sensor array." Appx5525–5526, ¶¶ 15, 38–39, Appx5405–5406 (Durand), ¶¶ 47–48. Golan uses "electronic calibration" of the "spatial offsets between wide image sensor array 110 and tele image sensor array 112" to address a jump (discontinuous) image change when the dual-aperture camera switches the camera output between sub-cameras or points of view. Appx5526, ¶ 38.

### 3.    Martin

Martin similarly concerns alignment of parallax images (e.g., images with overlapping visual fields but different points of view) so as to achieve a stable autostereoscopic video display when switching between the two images. Appx12–14 (citing Appx5530, Abstract), Appx5406–5409 (Durand), ¶¶ 49–53; *see*

*generally* Appx5530–5540. Specifically, Martin discloses generating a set of aligned parallax images by displaying alternating views of the images at a desired view rate and manipulating the images such that at least a portion are aligned. Appx13 (citing Appx5536, 3:6–13), Appx5530, Abstract. Martin's "critical alignment teaches determining correspondences between the coordinate systems of the two images from different points of view." Appx5433 (Durand), ¶ 96. That critical alignment process performs registration of two images, which is, in turn, "used for performing position matching to the video output images when switching between the two images." Appx5434 (Durand), ¶ 97. The registration process reduces an image "jump effect seen in video output images' as claimed . . . because it teaches reducing a discontinuous image change in video output images to achieve a stable transition between two parallax images from different points of view." Appx5435 (Durand), ¶ 98.

Martin's teaching of executing registration using critical alignment between two images from different points of view for performing position matching to video output images combined with Golan's teaching of switching in the digital camera yields the stable transition between images from different points of view for providing continuous zoom video output images as discussed by the challenged patents. Appx5410–5414 (Durand), ¶¶ 54–59.

14

B.    The IPRs

Apple filed petitions for *inter partes* review of claims 1–18 of the '233 patent and claims 1–25 of the '942 patent, supported by the testimony of Dr. Fredo Durand. Appx1001–1084, Appx5383–5494, Appx10001–10090, Appx15429–15576. Apple asserted in both petitions that Golan and Martin are "analogous prior art and are in the same field of endeavor pertaining to imaging systems generating video output images using images from two imaging sections having different points of view" and share the same need expressed by the challenged patents: "to provide continuous video output images when switching between images from two imaging sections having different points of view." Appx1023–1024 (citing Appx5410–5412 (Durand), ¶¶ 55–56), Appx10023–10024 (citing Appx15457–15459 (Durand), ¶¶ 53–55), Appx145 ('233 patent), Abstract, Appx163 ('942 patent), Abstract.

Corephotonics filed a preliminary response in each proceeding. Appx187, Appx190, Appx1085, Appx10091. Apple replied, and Corephotonics filed a sur-reply. Appx187, Appx190, Appx1112, Appx10295. The Board instituted review in both proceedings. Appx1173, Appx10114.

In response, Corephotonics alleged fundamental differences between Martin and Golan. Appx1231–1240. In a secondary argument, Corephotonics further argued that the analysis of Dr. Durand explaining why Golan and Martin qualify as

analogous art "fails to address whether Golan and Martin, separately, are 'analogous' to invention of the '233 patent." Appx1246.

In its replies, supported by testimony from Dr. Durand, Apple responded to Corephotonics' analogous-art arguments. Appx1273–1306 ('233 Reply), Appx6015–6057 ('233 Durand Reply), Appx10252–10289 ('942 Reply), Appx16844–16897 ('942 Durand Reply). First, citing to the patent, the petitions, Golan, Martin, and the expert testimony of both parties' experts, Apple emphasized the indisputable fact that the challenged patents, Golan, and Martin are "all in the field of imaging systems, and more specifically, imaging systems including digital cameras generating video output images using two imaging sections having different points of view." Appx1279 (citing Appx1023–1024, Appx6020, ¶ 4, Appx5517–5518, Appx5525–5526, Fig. 1, ¶¶ 9, 15, 36, Abstract, Appx5531, Fig.1, Appx5536, 3:6–13, 3:32–35, 4:10–15, Appx6101, Appx6113–6117). Apple further explained why a field of endeavor that excludes Golan and Martin (as urged by Corephotonics) would be inappropriately narrow under controlling legal authorities. Appx1279.

Apple further explained why Golan and Martin are "each pertinent to the problem addressed in the '233 Patent [and '942 Patent], namely, "a 'jump' (discontinuous) image change" ""[w]hen a dual-aperture camera switches the

camera output between sub-cameras or points of view.'" Appx1280 (citing Appx1023–1025, Appx159, 10:32–34, Appx6021, ¶ 6, Appx5525, ¶ 15).

Corephotonics filed a sur-reply, in which it fully addressed Apple's reply arguments and evidence while also accusing Apple of raising "completely new arguments" and evidence regarding analogous art. Appx1318–1319. Corephotonics never requested to strike or exclude Apple's reply arguments and evidence. Nor did Corephotonics attempt any other available mechanism to address any perceived procedural missteps.

### C.    The Board's Decisions

In its Decisions, the Board concluded that all challenged claims of the patents were unpatentable in light of the asserted prior art. Appx58, Appx142–143.

In reaching that conclusion, the Board made specific findings supporting its determination that Golan and Martin are analogous art, identifying the field of the challenged patents as "a dual-aperture zoom digital camera" (Appx4, Appx64) and recognizing one of the problems the patented inventions seek to solve as the "jump, or discontinuous image change," that typically occurs "when the camera switches between sub-camera output images." Appx5, Appx65. The Board then applied the evidence regarding Golan and Martin to conclude that both qualified as analogous art.

## SUMMARY OF THE ARGUMENT

Absent from Corephotonics' appeal is any genuine dispute over the characteristics of Golan and Martin or the motivation to combine Golan and Martin to teach the challenged claims. This is not surprising given the substantial evidence supporting the Board's conclusion of obviousness.

Instead, the feigned violation urged by Corephotonics stems not from an actual error in the process but rather Corephotonics' unjustifiably narrow and restrictive reading of first the petition, second the Board's Final Written Decisions, and third the law governing analogous art. Reading the briefing and orders fairly and in the context of each document as a whole, and applying the proper standards for analogous art, there is no abuse of discretion or legal error in this case.

Another theme that permeates the opening brief is the suggestion that reversal is warranted because Apple allegedly failed to meet a "*prima facie*," "prerequisite" or threshold burden to prove that Martin and Golan are analogous art. To the extent Corephotonics questions whether Apple met its burden to support institution, that question is not reviewable. 35 U.S.C. § 314; *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 268 (2016); *Thryv*, 140 S. Ct. at 1376–77. If, on the other hand, Corephotonics seeks to impose a heightened, threshold burden to prove analogous art separate and apart from the obviousness analysis, that argument, too,

is inconsistent with precedent, which calls for a flexible approach to the obviousness determination.

Similarly, Corephotonics' claim of surprise regarding Apple's positions in reply are the result of Corephotonics' unwarrantedly narrow reading of the petition and its supporting evidence. The claimed field of endeavor is derived from the patents themselves, as are the problems facing the inventor, and the petition describes the portions of Golan and Martin that Apple asserted taught the challenged claims. Corephotonics did not lack notice of Apple's position regarding analogous art; it simply disagreed with how the Board applied the facts to those positions. In challenging the merits of the Board's analogous art findings—a challenge governed by substantial evidence review—Corephotonics' arguments suggest a standard for showing analogous art that only the claimed invention itself could meet. That is not the standard for showing analogous art.

To be analogous, a reference need only fall within the same field of endeavor or be pertinent to at least some problem facing the inventor. Here, the Board's finding that Golan—a reference that also addresses reducing a jump effect in a dual-aperture camera—is in the same field of endeavor as the claimed inventions is supported by substantial evidence. Similarly, substantial evidence supports the Board's finding that Martin is pertinent to solving the problem of jump or discontinuity when switching between images. Martin need not disclose

all of the same features as the claimed invention or even involve cameras (although it does) to be pertinent. It is enough that the reference would be something a POSITA would look to in solving the stated problem. Martin meets this standard.

Finally, Corephotonics' only substantive challenge to the prior art disclosures, which relates solely to the '942 patent, props up and attacks a straw man. Corephotonics' argument misinterprets the Board's understanding of the "shifting" limitation—suggesting incorrectly that the Board required the shift to be based on a "transformation coefficient"—then attempts to discredit the Board's analysis for failing to explain how the prior art discloses that additional requirement of the claim. But the Board did not add such a requirement to the claim language, rendering Corephotonics' arguments inapplicable. With that improper understanding of the limitation aside, the Board's analysis is fully supported by the substantial evidence.

For these reasons, the Decisions should be affirmed.

## ARGUMENT

## I.    Standard of Review

To the extent Corephotonics seeks to challenge the propriety of institution, that question is unreviewable. 35 U.S.C. § 314(d); *Cuozzo*, 579 U.S. at 268; *Thryv*, 140 S. Ct. at 1376–77.

Generally, the Board's legal conclusions are reviewed de novo, while its factual findings are reviewed for substantial evidence. *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1360 (Fed. Cir. 2016).

Decisions related to compliance with the Board's procedures, such as what arguments are fairly presented in a petition and the proper scope of reply, are reviewed for an abuse of discretion. *Provisur Techs., Inc. v. Weber, Inc.*, No. 21-1942, — F.4th —, 2022 WL 4474941, at *3 (Fed. Cir. Sept. 27, 2022) (precedential). An abuse of discretion occurs only if the Board's decision: "(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous findings of fact; or (4) involves a record that contains no evidence on which the Board could rationally base its decision." *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1121 (Fed. Cir. 2004).

Corephotonics cites *In re IPR Licensing, Inc.*, 942 F.3d 1363, 1369 (Fed. Cir. 2019), for the proposition that "[w]hether the Board improperly relied on new arguments is reviewed *de novo*." CP Br. 33. But *IPR Licensing*[2] did not address compliance with 35 U.S.C. § 312(a)(3) and 37 C.F.R. § 42.23, but instead addressed improper reliance on evidence related to non-instituted grounds. 942 F.3d at 1369. Here, in contrast, Corephotonics questions whether certain reply

---

[2] *IPR Licensing* relies on *In re Nuvasive, Inc.*, 841 F.3d 966, 971 (Fed. Cir. 2016), which also addressed the APA generally rather than the specific rules at issue in these appeals.

evidence and arguments fell within the permissible scope of 35 U.S.C. § 312(a)(3) and 37 C.F.R. § 42.23 (requirements for petitions and replies). This Court consistently reviews this question for an abuse of discretion. *See Provisur*, 2022 WL 4474941, at *3; *Ericsson Inc. v. Intellectual Ventures I LLC*, 901 F.3d 1374, 1379 (Fed. Cir. 2018); *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367–68 (Fed. Cir. 2016); *see also Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 705 (Fed. Cir. 2020); *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1078 (Fed. Cir. 2015); *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1330 (Fed. Cir. 2019); *Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 775 (Fed. Cir. 2018). If a conflict exists in the cases, the earlier precedents in *Belden* and *Intelligent Bio-Systems* govern. *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988).

Obviousness is a question of law based on underlying fact findings, such as the scope and content of the prior art, the presence of a motivation to combine references, and whether a reference qualifies as analogous art. *SIPCO, LLC v. Emerson Elec. Co.*, 980 F.3d 865, 870 (Fed. Cir. 2020) (quoting *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000)); *Intelligent Bio-Sys.*, 821 F.3d at 1367–68; *Airbus S.A.S. v. Firepass Corp.*, 941 F.3d 1374, 1379 (Fed. Cir. 2019).

II.  **Substantial evidence supports the finding that Golan and Martin are analogous art.**

    A.  **Analogous art is part of the obviousness analysis rather than an independent inquiry.**

Corephotonics insists Apple bore the burden to prove analogous art as a prerequisite to establishing a *prima facie* case of obviousness. CP Br. 2, 3, 20, 38, 40–42. In *Cuozzo*, the Supreme Court held that "[w]here a patent holder merely challenges the Patent Office's 'determin[ation] that the information presented in the petition . . . shows that there is a reasonable likelihood' of success 'with respect to at least 1 of the claims challenged,' § 314(a), or where a patent holder grounds its claim in a statute closely related to that decision to institute inter partes review, § 314(d) bars judicial review." 579 U.S. at 275–76; *Thryv*, 140 S. Ct. at 1376–77. Following *Cuozzo*, this Court has recognized that a patent owner's efforts (as in this case) to exclude arguments and evidence in the reply "because it was necessary to make a prima facie case of obviousness" but came too late to satisfy that requirement, "seems to be a back-door attempt to challenge whether the Board properly instituted review based on whether the petition contained a prima facie case of obviousness" and is, therefore, not appealable under *Cuozzo*. *Valmont Indus., Inc. v. Lindsay Corp.*, 730 F. App'x 918, 922–23 (Fed. Cir. 2018) (non-precedential).

Conversely, if Corephotonics seeks to require the petitioner to prove analogous art under some heightened standard that exceeds that to prove obviousness as a whole, such a standard is not supported by the controlling legal authorities.

To be sure, authorities reciting the standard for analogous art articulate a two-fold inquiry: (1) whether the art is from the same field of endeavor, regardless of the problem addressed or (2) even if not in the same field of endeavor, whether the reference nonetheless is reasonably pertinent to the problem with which the inventor is involved. *In re Clay*, 966 F.2d 656, 658–59 (Fed. Cir. 1992); *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004). And these are the authorities Corephotonics relies upon. But neither *Clay* nor *Bigio* supports application of a heightened burden to the petitioner in an IPR proceeding to show analogous art conclusively at the filing stage (or independent from the obviousness analysis). Nor could they, since IPRs did not even exist at the time of these early decisions.

Nor did *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), exist when *Clay* and *Bigio* issued. While *KSR* did not address analogous art specifically, it rejected a rigid approach to determining obviousness in favor of a more holistic, expansive, and flexible approach to the inquiry that identifies the "'scope and content of the prior art'" as only one of multiple considerations in the obviousness analysis. *Id.* at 415–16. And although this Court has continued to apply the two-prong analogous

art standard articulated in *Clay*, the Court has also emphasized following *KSR* by "constru[ing] the scope of analogous art broadly," with a recognition that "familiar items may have obvious uses beyond their primary purposes" so that "a person of ordinary skill often will be able to fit the teaching of multiple patents together like pieces of a puzzle." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1238 (Fed. Cir. 2010) (quoting *KSR*, 550 U.S. at 402); *see Donner Tech., LLC v. Pro Stage Gear, LLC*, 979 F.3d 1353, 1359 (Fed. Cir. 2020) ("[t]he scope of the prior art includes all analogous art").

Thus, following *KSR*, there is no reason to treat analogous art differently than any other aspect of the flexible obviousness analysis. And there is no basis to deviate from the procedures established by the Board for the presentation of evidence in an IPR. As this Court has explained, "the introduction of new evidence in the course of the trial is to be expected in *inter partes* review trial proceedings and, as long as the opposing party is given notice of the evidence and an opportunity to respond to it, the introduction of such evidence is perfectly permissible under the APA." *Genzyme Therapeutic Prods. LP v. Biomarin Pharm. Inc.*, 825 F.3d 1360, 1366 (Fed. Cir. 2016). Said another way, "[t]he purpose of the trial in an *inter partes* review proceeding is to give the parties an opportunity to build a record by introducing evidence—not simply to weigh evidence of which

the Board is already aware." *Id.* at 1367. This is as true for analogous art as for any other element of the obviousness analysis during the IPR process.

Thus, to the extent Corephotonics argues for a heightened standard for determining analogous art, requiring conclusive proof at the time of the petition that can neither be explained nor further supported in response to the patent owner's arguments and evidence, such a standard should be rejected as contrary to *KSR* and authorities following that decision.

Instead, it is most appropriate to consider analogous art as part of the obviousness inquiry under the procedures established under the APA for all other arguments and evidence presented during an IPR. Applying that standard here supports affirmance.

## B.   Substantial evidence supports the Board's finding that Golan and Martin are analogous art to the patents.

Following *KSR*, the Court has continued to follow two criteria for determining whether prior art is analogous: (1) whether the art is from the same field of endeavor, regardless of the problem addressed, or (2) whether the reference is reasonably pertinent to a problem with which the inventor is involved. *Donner*, 979 F.3d at 1359.

Notably, this articulation of the standard arose in a few early CCPA decisions and has since been oft-repeated. *See, e.g., Application of Wood*, 599 F.2d 1032, 1036 (CCPA 1979); *Application of Antle*, 444 F.2d 1168, 1172 (CCPA

1971). The Supreme Court's treatment of analogous art, however, has not been limited to this two-part test. *See, e.g., Dann v. Johnston*¸ 425 U.S. 219, 229 (1976). *KSR* only serves to reinforce a more flexible analogous art analysis.

The field of endeavor is a question of fact that requires "reference to explanations of the invention's subject matter in the patent [], including the embodiments, function, and structure of the claimed invention" considered "from the vantage point of the common sense likely to be exerted by one of ordinary skill in the art assessing the scope of the endeavor." *Bigio*, 381 F.3d at 1325, 1326. "[T]he scope of any field of endeavor will vary with the factual description of each invention." *Id.* at 1326. The field of the endeavor may, for example, be determined by the structure of the invention. *Id.* at 1326–27 (affirming finding that toothbrush was in the same field of invention as small facial hair brushes due to similarities in the structure).

Here, the Board recognized at the outset of its Decisions that the patents "concern[] a dual-aperture zoom digital camera." Appx4, Appx64. The Board further acknowledged that the patents seek to address the problem of "jump" or "discontinuous image change, when the camera switches between sub-camera output images." Appx5, Appx65. Later in the Decisions, the Board also cited Apple's description of the field of endeavor as "imaging systems and, more specifically, imaging systems including digital cameras [for] generating video

27

output images using two imaging sections having different points of view." Appx32, Appx102.

The Board then found that Golan falls in the same field of endeavor as the claimed invention because it describes performing digital zoom using a wide image sensor array and lens and a tele image sensor array and lens with the goal of providing "'continuous electronic zoom with uninterrupted imaging.'" Appx32 (citing Appx5525, ¶ 15), Appx103. Substantial evidence supports the Board's finding. *See* Appx5517–5529, Appx5404–5406 (Durand), ¶¶ 46–48, Appx5410–5414 (Durand), ¶¶ 54–59.

In response to the substantial evidence, Corephotonics argues "[t]here is no indication that Golan's one-time calibration was directed to overcoming the jump problem while 'zooming' during video output." CP Br. 47 (citing Statement of the Case IV.A.). But, to fit within the field of endeavor, Golan need only concern imaging systems broadly. *See, e.g.,* Appx6019 (Durand Reply), ¶ 3. Indeed, even during prosecution, the examiner "relied on prior art related generally to imaging systems implementation, including Simmons." Appx6019–6020, ¶ 3. But here, as the Board found, Golan is within the field because it not only falls within the broader field of imaging system but directly performs the same type of imaging system described in the patents—zoom using a wide image sensor array and lens

and a tele image sensor array and lens. Appx32, Appx103, Appx5404–5405 (Durand), ¶ 46 (citing Appx5525, ¶ 9), Appx6020.

Second, that Golan's invention shares the goal of providing "continuous electronics zoom with uninterrupted imaging" (Appx32, Appx103) supports the further conclusion that Golan is pertinent to a problem to be solved by the claimed invention. Such a finding, too, is supported by substantial evidence. Indeed, even Corephotonics acknowledges that Golan addresses the problem of the interruption in video imaging. *See* CP Br. 13 ("Golan recognizes that using two cameras to provide different zoom ranges could interrupt video imaging during zoom."). Corephotonics' argument appears to criticize the way in which Golan solves the problem, arguing that Golan's solution omits the registration or position matching taught by the challenged claims. *See* CP Br. 14, 47. But Corephotonics confuses the issue of analogous art with the ultimate conclusion of obviousness.

The determination of what is reasonably pertinent to the problem facing a field requires a similarly flexible analysis. "A reference is reasonably pertinent if, even though it may be in a different field from that of the inventor's endeavor, it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem." *Clay*, 966 F.2d at 659. "[A] reference need not be reasonably pertinent to every problem facing a field to be analogous prior art, but rather need only be 'reasonably

pertinent to one or more of the particular problems to which the claimed inventions relate.'" *CyWee Group Ltd. v. Google LLC*, 847 F. App'x 910, 913 (Fed. Cir. 2021) (non-precedential) (quoting *Donner*, 979 F.3d at 1361). "[A] reference can be analogous art even if there are significant differences." *Donner*, 979 F.3d at 1361. "Indeed, there will frequently be significant differences between a patent and a reference from a different field of endeavor." *Id.*; *see Scientific Plastic Prods., Inc. v. Biotage AB*, 766 F.3d 1355, 1360 (Fed. Cir. 2014) (finding substantial evidence supports Board's finding that references are analogous art where references are sufficiently close the problem addressed by the invention). "What matters is whether these differences support a determination that the reference is not reasonably pertinent to a problem to which the claimed inventions relate." *CyWee*, 847 F. App'x at 913 (citing *Donner*, 979 F.3d at 1361).

As to Martin, substantial evidence supports the Board's finding that Martin is reasonably pertinent to the problem to be solved by the claimed inventions. Specifically, the Board identified the problem faced by the inventor as "reducing an image jump effect seen in video output images when switching between cameras that have different [points] of view." Appx33, Appx103. The Board further found that Martin addresses this problem. Appx33, Appx103. Specifically, the Board found that "Martin describes the problem in terms of its solution: '[c]ritical alignment corresponds to a condition where the degree of alignment is

30

sufficient to achieve a stable auto stereoscopic display' and '[s]tability of the whole image may not be required, as long as at least a particular region of interest in the auto stereoscopic display is stable.'" Appx33 (quoting Appx5537, 5:53–58), Appx5406–5414 (Durand), Appx103.

This recognition of the need to align an image is pertinent to the claimed invention. Martin need not require multiple cameras (CP Br. 48) or teach continuous video zoom (CP Br. 49–50) to be reasonably pertinent to the problem of the invention. *Donner*, 979 F.3d at 1361. But this Court need not reach that question because the substantial evidence shows that a POSITA would have understood Martin's teachings to apply to multiple cameras and continuous video zoom. Appx6020 (Durand Reply), ¶ 4 (quoting Appx5531, Fig. 1, Appx5536, 3:6–13, 3:32–35, 4:10–15 ("The parallax images used to generate the autostereoscopic display may be acquired from a variety of imaging sources such as digital still cameras, digital video cameras, . . . and any other suitable imaging source."), Appx6022–6023 (Durand Reply), ¶ 9; *see also* Appx6101, Appx6113–6117 (applying a broad description of the field).

The issue here is not what Martin does not teach but whether one skilled in the art would look to Martin to solve the problem. Here, the Board had more than substantial evidence to support its findings that Martin is analogous art. The

Board's findings that Golan and Martin are analogous art should, therefore, be affirmed.

### C.    The Board acted within its discretion in considering Apple's reply arguments and evidence.

The Board's analogous art determination is supported by looking exclusively to the Petition and supporting evidence. *See* § II.B. In any event, the Board did not abuse its discretion in considering Apple's reply arguments and evidence. The line between permissible reply evidence and impermissible new arguments is not nearly as bright as Corephotonics suggests, and Apple's reply here does not come close to crossing it. Arguments and evidence provided in response to a patent owner's response are the very purpose of the reply brief. *See Infineum USA L.P. v. Chevron Oronite Co.*, No. 20-1333, 2022 WL 3147683, at *3–4 (Fed. Cir. Aug. 8, 2022) (non-precedential). This includes clarifications of a party's position, and it may include new evidence. Indeed, there is "no blanket prohibition against the introduction of new evidence during an inter partes review proceeding." *Anacor Pharms., Inc. v. Iancu,* 889 F.3d 1372, 1380 (Fed. Cir. 2018). Rather, "the introduction of new evidence in the course of the trial is to be expected in *inter partes* review trial proceedings and, as long as the opposing party is given notice of the evidence and an opportunity to respond to it, the introduction of such evidence is perfectly permissible." *Genzyme*, 825 F.3d at 1365–66. The question is one of fair notice. *Intelligent Bio-Sys.*, 821 F.3d at 1369–70.

In a handful of the most extreme and clearly distinguishable cases involving a petitioner's assertion of a completely new rationale supported by new evidence in reply, this Court has declined to disturb the Board's discretion in refusing to consider such reply arguments and evidence. *See, e.g., Intelligent Bio-Sys.*, 821 F.3d at 1369–70 (affirming Board's disapproval of a party's "entirely new rationale [and new evidence of non-patent literature references] to explain why one of skill in the art would have been motivated to combine" prior art references); *Ariosa*, 805 F.3d at 1367 (affirming Board's disapproval of a party's reliance "on previously unidentified portions of a prior-art reference to make a meaningfully distinct contention"); *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1285–87 (Fed. Cir. 2017) (affirming Board's ruling that an obviousness challenge was "insufficiently precise and underdeveloped" to support more developed reply arguments); *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1330–31 (Fed. Cir. 2019) (affirming Board's refusal to permit new argument inconsistent with express statements of counsel to the Board as to the party's position)[3]. And, indeed, these are the cases Corephotonics cites.

---

[3] In *Henny Penny*, the Court emphasized "tellingly, when pressed by the Board on what particular theory was presented in the petition, [petitioner's] counsel never argued [the position it now seeks to pursue on appeal], but rather confirmed that 'in the original petition' [it proposed a narrower ground of unpatentability]." 938 F.3d at 1331.

But in limiting its analysis to the most egregious of cases, Corephotonics ignores the wealth of authority applicable to the facts of this case in which the Court has found the Board abused its discretion in refusing to consider reply arguments and evidence that (1) can be fairly understood from the petition, or (2) fairly respond to the patent owner's response. *See, e.g., Ericsson*, 901 F.3d at 1379–81 (reversing Board's refusal to consider reply arguments because Board parsed arguments with "too fine of a filter"); *Andrea Elecs.*, 949 F.3d at 705–07 (holding Board abused its discretion in rejecting reply arguments that "relie[d] on the same algorithm from the same prior art reference" to demonstrate "another example of the same algorithm to further explain" its original position); *cf. Chamberlain Grp., Inc. v. One World Techs., Inc.*, 944 F.3d 919, 925 (Fed. Cir. 2019) (affirming Board's consideration of argument raised by patent owner at oral argument as a clarification of prior position rather than a new argument).[4] Applying these authorities, the present case is not a close call. There is ample basis in the petition and evidence to support the Board's decision to consider Apple's

---

[4] *See also Uniloc 2017 LLC v. Facebook, Inc.*, No. 19-2162, 2021 WL 5370480, at *7 (Fed. Cir. Nov. 18, 2021) (Board should have considered reply arguments and evidence fairly related to an assertion in petition, even if slightly shifted by arguments in patent owner's response); *AMC Multi-Cinema, Inc. v. Fall Line Patents, LLC*, No. 21-1051, 2021 WL 4470062, at *6-7 (Fed. Cir. Sept. 30, 2021) (Board should have considered reply arguments grounded in petition that were responsive to Board's unfavorable reasoning at institution).

reply arguments and evidence supporting its basis for asserting Golan and Martin as analogous art.

Unlike the authorities cited by Corephotonics, this appeal rests on a technicality—the argument that Apple made a fatal mistake by allegedly failing to expressly say that Golan and Martin are not only in the same field of endeavor as each other but are also in the same field as the invention. CP Br. 3. As an initial matter, comparison of the prior art references to each other is a natural part of a properly flexible, analogous art inquiry. *See Antle*, 444 F.2d at 1172; *In re Pagliaro*, 657 F.2d 1219, 1224–25 (CCPA 1981). Indeed, this Court's predecessor court analyzed whether references were analogous by comparing them to other references in the proposed combination. *See Antle*, 444 F.2d at 1172. More specifically, the Court in *Antle* reasoned:

> [T]he principal reference [McLaren], is also a mobile produce packing plant, i.e., it is 'in the very same art,' and Allen, the principal secondary reference, is for a process of preserving fresh produce, which is the whole object of appellant's invention. . . . . *[W]hile Payton and Miller might initially be thought to be in arts foreign to mobile produce packing technology, once the motive to combine McLaren and Allen is established, the additional combination of Payton and Miller therewith tends to flow from the close relationship of Allen with Payton and Miller.*

*Id.* (emphasis added); *see also Pagliaro*, 657 F.2d at 1224–25.

Regardless, no reasonable person can read the petitions without understanding that Apple was asserting the same field of endeavor for Golan and

Martin as that of the claimed inventions. From the description of the claimed inventions forward, the petitions describe the field as "pertaining to imaging systems generating video output images using two imaging sections having different points of view." Appx1023 (citing Appx5410–5411, ¶ 55), Appx10023 ('942 Petition), Appx1023, Appx1061, Appx1068, Appx1075, *see also* Appx1009–1010 (describing the '233 patented invention), Appx10009 (describing the '942 patented invention). Thus, when the petitions state "the references [Golan and Martin] are analogous prior art and are in the same field of endeavor pertaining to imaging systems generating video output images using two imaging section having different points of view," it is disingenuous for Corephotonics to suggest it did not understand the petition to be stating that the stated field of endeavor for Martin and Golan is the same as that of the claimed invention.

The basis of claiming Golan and Martin as "reasonably pertinent to the particular problem" addressed by the challenged patents is equally clear. Corephotonics characterizes "reasonably pertinent to the particular problem" as an "entirely 'separate test.'" CP Br. 38 (quoting *Bigio*, 381 F.3d at 1325). That suggestion is inconsistent with the authorities acknowledging that it is entirely possible for prior art both to fall within the same field of endeavor and to be reasonably pertinent to the problem. *See, e.g.*, *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 995, 1001–02 (Fed. Cir. 2016) (finding prior art reference "both from the

same field of endeavor as the [claimed invention] and [] reasonably pertinent to the problem" defined by the claimed invention). Thus, the criteria for determining analogous art are not mutually exclusive.

Here, there can be no misunderstanding from the petition as to the problem addressed by the asserted patents, "namely, 'a jump (discontinuous) image change" when a "camera switches the camera output between sub-cameras or points of view." Appx1280 (citing Appx1023–1025, Appx6021, ¶ 6), Appx10266 (citing Appx179, 10:37–39, Appx15607 ¶ 15, Appx15619, 5:51–55). The petitions further explain how Golan and Martin speak to the same problem. *See, e.g.*, Appx1023–1025. For example, the petitions refer to "Golan's expressed desire to achieve 'continuous electronic zoom with uninterrupted imaging, when switching back and forth between the first image sensor array and the second image sensor array.'" Appx1024; *see* Appx1024 (further explaining Golan and Martin "share a need to provide continuous video output images when switching between images from imaging sections having different points of view"). In reply, Apple reinforced these positions and responded directly to Corephotonics by explaining, how Golan and Martin are "reasonably pertinent" to solving the jump "when a dual-aperture camera switches the camera output between sub-cameras or points of view." *See* Appx1280–1291.

37

Notably, the Reply not only cites specifically to the portions of the petitions supporting its clarifications, it also relies on the broad description of the field proffered by "Patent Owner's own expert." Appx1279 (citing Appx6113–6117). This is precisely what the reply is expected to address. In suggesting otherwise, Corephotonics parses Apple's "arguments on reply with too fine of a filter." *Ericsson*, 901 F.3d at 1380.

As outlined above, Apple did not "shift" arguments, but rather clarified its position. *See Uniloc 2017*, 2021 WL 5370480, at *8. There are no inconsistencies between the analogous art positions taken in the petition and clarified in reply, and "there is nothing improper about arguing that the prior art discloses particular claim language in several different ways." *Cf. id.*

Thus, it is not surprising that despite noting that "Petitioner compares Golan and Martin to each other instead of the claimed invention," the Board found Apple "properly replied to Patent Owner's criticism of its showing regarding analogous art." Appx32, n.11, Appx102, n.19. The Board cited to references in the petition and corresponding evidence that supported Apple's reply arguments. *See, e.g.,* Appx32, Appx102. The Board further cited *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1379 (Fed. Cir. 2015), and *Apple Inc. v. Qualcomm Inc.*, IPR2018-01245, Paper 39, 16 (PTAB Jan. 15, 2020). Consistent with the numerous authorities cited above holding that reply arguments and evidence are

appropriate to clarify the petition and/or respond to arguments raised in the patent owner's response, *Dynamic Drinkware* supports that, while the burden of persuasion never shifts from the petitioner to prove unpatentability, the burden of production of evidence does. 800 F.3d at 1379.[5]

Under these circumstances, the Board was well within its discretion to find Apple's clarifications in reply proper. Appx32, Appx102–103; *see also Ericsson*, 901 F.3d at 1379–80.

### D. Corephotonics cannot claim a lack of notice of reply arguments because it failed to exhaust all remedies.

Corephotonics had ample opportunity to respond to Apple's arguments, including the arguments and supporting evidence made in reply. As noted above, Apple's position as to Martin's and Golan's character as prior art has never changed, not since the other IPR proceedings involving the same parties and the same prior art references and not since the petitions, preliminary briefing, rehearing briefing, or the final briefing in these matters. If, through all of this briefing, Corephotonics still believed it needed an additional opportunity to respond to any arguments or evidence, Corephotonics was not without remedies.

---

[5] In *Apple Inc. v. Qualcomm Inc.*, the Board cited *Dynamic Drinkware* to reject a patent owner's argument that it should consider solely evidence cited in the petition regarding analogous art rather than looking to the record as a whole as developed during the proceedings.

It could have moved to strike or exclude allegedly improper reply arguments and evidence. 37 C.F.R. § 42.64(c). It did not. It could have cross-examined Apple's expert about his reply comments and filed the deposition transcripts. *See* 37 C.F.R. §§ 42.23(b), 42.51(b)(1)(ii). This, Corephotonics did. Corephotonics deposed Dr. Durand at length for two days following Apple's reply and filed both deposition transcripts in support of its sur-reply. *See* Appx17833–18257 (Durand Depositions), Appx1317, Appx1321. If Corephotonics believed more evidence was necessary, it also could have sought leave to file sur-rebuttal evidence beyond the additional expert deposition testimony. 37 C.F.R. § 42.5(b) (allowing a party to seek waiver or suspension of any requirement). Again, it did not.

Corephotonics had a full opportunity to respond to Apple's reply arguments. *See Provisur*, 2022 WL 4474941, at *4. If it believed additional remedies were necessary, it chose not to exercise those remedies. Having failed to exhaust its remedies before the Board, Corephotonics should not be allowed to claim it was deprived of notice and meaningful opportunity to respond to Apple's reply arguments and evidence. *Belden*, 805 F.3d at 1081–82 ("With no board denial of concrete, focused requests [for leave to exercise the listed remedies], we are not prepared to find that Belden was denied a meaningful opportunity to respond.").

**E.    The Board did not articulate a new theory of obviousness in the Final Written Decisions.**

The Board satisfies its obligation not to deviate from the obviousness grounds asserted in the petition where it considers each party's contentions and supporting evidence and reaches a conclusion supported by the substantial evidence. *See Agarwal v. TopGolf Int'l, Inc.*, 813 F. App'x 476, 480–81 (Fed. Cir. 2020) (non-precedential); *see also Sirona Dental Systems GmbH v. Institut Straumann AG*, 892 F.3d 1349, 1356 (Fed. Cir. 2018) (finding Board's reliance on portions of the record cited in petition but not broadly discussed by either party does not violate APA). In arguing the Decisions are based on new theories of analogous art, Corephotonics once again argues for the narrowest, most rigid reading of the Decisions possible. But Corephotonics' arguments overlook substantial portions of the Board's findings as they relate to both the field of endeavor and the pertinence of prior art to the problem addressed by the claimed inventions.

**1.    The field of endeavor never changed, and Golan fits within it.**

Corephotonics faults the Board for allegedly adopting a new field of endeavor that departs from that argued by Apple. CP Br. 44–45. What Corephotonics cites for this proposition is the Board's explanation of how the prior art fits within the field of endeavor, not what the field of endeavor is.

The field of endeavor is determined "by reference to explanations of the invention's subject matter in the patent application, including the embodiments, function, and structure of the claimed invention." *Bigio*, 381 F.3d at 1325. Here, the Decisions summarize the invention's subject matter at the outset as "concern[ing] a dual-aperture zoom digital camera," which includes sub-cameras with different points of view. Appx4–5, Appx64–65. The Decisions further recite the challenged claims, which relate specifically to video output. Appx6–7, Appx66–67. This description of the patented subject matter is taken from the patents' specification. And while it may not be the only way to characterize the invention's field of endeavor, it is consistent with Apple's similar description of the field of endeavor as "the field of imaging systems, and more specifically, imaging systems including digital cameras [for] generating video output images using two imaging sections having different points of view."[6] Appx32 (citing Apple's clarification on reply) (quoting Appx1279 (further citing Appx6020, ¶ 4, Appx1023–1024 (Petition), Appx5517–5518, Appx5525–5526, Abstract, Fig. 1, ¶¶ 9, 15, 36, Appx5531, Appx5536, Fig. 1, 3:6–13, 3:32–35, 4:10–15, Appx6101,

---

[6] While Apple believes its characterization of the field better reflects the claims, any difference between the articulations is irrelevant, as Golan falls squarely within the field of endeavor either way, and Martin is reasonably pertinent to a problem facing the inventors.

Appx6113–6117)), Appx102–103; *see also* Appx1023–1024 ('233 Petition), Appx10023–10024 ('942 Petition).

After describing the field of endeavor, the Decisions explain why Golan falls within that same field. Specifically, the Board finds "[w]e are persuaded that Golan is in the same field of endeavor as the claimed invention because it describes performing digital zoom using a wide image sensor array and lens and a tele image sensor array and lens with the goal of providing 'continuous electronic zoom with uninterrupted imaging.'"[7] Appx32, Appx103. Contrary to Corephotonics' argument, this is not a change in the field of endeavor. The field of endeavor had already been defined earlier in the decisions. The narrow sentence quoted by Corephotonics is nothing more than an explanation of how Golan fits within that field. Appx5.

### 2. Martin is pertinent to the problem, which is clear from the Decisions.

Regarding the Board's finding that Martin is pertinent to the problem, Corephotonics' complaints similarly stem from too narrow a read of the Decisions. The Decisions find that the patents address the issue of jump or discontinuous image change "when the camera switches between" sub-camera output images by employing a smooth transition "between cameras or POVs [points of view] that

---

[7] This finding supports the conclusion that Golan is also pertinent to the problem to be solved by the claimed inventions, which provides an alternative basis to affirm the Board's analogous art determinations as to Golan.

minimizes the jump effect." Appx5, Appx65. The Decisions further summarize Apple's position that "Golan and Martin 'are each pertinent to the problem addressed in the [']233/']942] Patent, namely, 'a "jump" (discontinuous) image change' '[w]hen a dual-aperture camera switches the camera output between sub-cameras or **points of view**.'" Appx32 (emphasis added) (citing Appx1280 (citing Appx6021, ¶ 6, Appx159, 10:32–34, Appx1023–1025, Appx5525, ¶ 15, Appx5537, 6:51–55)), Appx103.

Following these consistent recitations of the problem, the Decisions conclude: "Martin is reasonably pertinent to the problem faced by the inventor." Appx33, Appx103. The Board repeats the problem as "reducing an image jump effect seen in video output images when switching between cameras that have different **fields of view**." Appx33 (emphasis added), Appx103. The Board further cites to portions of Martin in analyzing the reference's reach, none of which refer to field of view. *See* Appx5537, 5:53–58. The sentence that uses the term "fields of view" is the sole basis of Corephotonics' assertion that the Board changed its position as to the problem faced by the inventor. When read in the context of the Decisions as a whole, however, it is clear that the Board intended to refer to the term "points of view" rather than "fields of view" in describing Martin's pertinence to a problem facing the inventors. *See Apple Inc. v. INVT SPE LLC*, 851 F. App'x 200, 203 (Fed. Cir. 2021) (non-precedential) (rejecting reading of limited

statements in final written decision taken out of context in favor of Board's intended meaning from the decision's full context).

Looking to the Decisions as a whole, no reasonable person can read the Decisions without understanding the Board's reference to "fields of view" is a typographical error. In addition to the clear statements cited above, in its description of Martin, the Decisions explain that "[b]y manipulating parallax images—two or more images with overlapping visual fields but **different points of view**—Martin's method creates a moving three-dimensional image without the use of special viewing aids." Appx12 (citing Appx5530, Abstract) (emphasis added), Appx81. The Decisions further cite testimony of Apple's expert that "a POSITA would have understood that Martin's teachings of critical alignment for stable transition between images of **different points of view** apply to electronic camera systems providing continuous zoom video output [i]mages as taught in Golan, regardless of whether a three dimensional illusion is provided." Appx21–22 (citing Appx5414, ¶ 59, Appx5553, 4:58–62, Appx5556, 10:2–5, Appx5764, 1:63–2:1, Appx5866, Appx5623, ¶¶ 41–42); *see also* Appx91–92 (citing Appx15460–15461, ¶ 57, which refers to "points of view" and otherwise similar evidence). It is further undisputed that the problem to be solved involved the jump seen due to differences in points of view. *See* Appx1220–1221 (Patent Owner Resp.) (when "cameras are at different spatial positions, the images taken from [the two cameras] are seen

from different **points of view** (POV)" and thus when switching between them, "a user will normally see a 'jump' (discontinuous change)").

The Decisions reference "fields of view" when explaining that Golan and Martin both "involve parallax effects caused by two cameras with different fields of view . . . ," thus rejecting Corephotonics' argument that Golan and Martin are "fundamentally dissimilar." Appx25–26 (citing Appx1231, Appx1236–1237, Appx1240), Appx98. Although Corephotonics states that the distinction between "points of view" and "fields of view" was "indisputably critical to defining the field" and "were disputed by the parties," the cited record does not draw any distinction between "points of view" and "fields of view" as those terms might relate to the analogous art determination. For example, Appx1320–1322 is a portion of the Patent Owner's Sur-Reply arguing that Martin should not be treated as analogous art because it is allegedly "not concerned with reduction of jump effects in video images when switching between cameras during zoom." Appx1321. There is no mention of "field of view" or "point of view" anywhere in these cited pages. Other pages address Corephotonics' attempts to distinguish the type of video images in Martin from the video images in Golan. *See, e.g.*, Appx1326–1327. None attempt to draw a distinction based on an image's "point of view" versus the "field of view."

Similarly, while Corephotonics attempts to identify differences between the video output in Martin and that disclosed in the patented inventions, Corephotonics fails to identify how this argument impacts the Board's determination of the pertinent problem. To the extent Corephotonics disputes the Board's resolution of this issue, the challenge is one of substantial evidence, not adequate notice of the relevant grounds.

Thus, the Board clearly meant to (and in most areas of the Decisions did) use the term "points of view" rather than "fields of view" in describing Martin's pertinence to the problem to be solved. The Court may accept the clear intent of the Board. *See, e.g., Netlist, Inc. v. Diablo Techs., Inc.,* 701 F. App'x 1001, 1005, n.1 (Fed. Cir. 2017) (non-precedential) (recognizing clerical error in decision and applying Board's intent as clear from the record).

This case is distinguishable from those cited by Corephotonics, which held either that the Board improperly relied on facts and theories asserted for the first time at oral argument (*Dell, Inc. v. Acceleron, LLC*, 818 F.3d 1293, 1301 (Fed. Cir. 2016)), or the Board based its decision on a claim construction adopted for the first time in the final written decision (*Qualcomm Inc. v. Intel Corp.*, 6 F.4th 1256 (Fed. Cir. 2021)). Here, the Decisions are consistent with the positions and evidence

presented during the proceeding, and there is no abuse of discretion in the Decisions.[8]

### III. The Board's finding that the "shifting" limitation in the '942 patent claims is rendered obvious by the prior art is supported by substantial evidence.

The sole limitation disputed by Corephotonics—"shifting . . . according to a distance of an object"—appears in claim 1 of the '942 patent.[9] As discussed above, claim 1 pertains to "video output images" and, particularly, to reducing an "image jump effect" when switching between images captured from different points of view. The '942 patent purports to achieve this "smooth transition" between the two images through techniques that "may include matching the position, scale, brightness and color of the output image before and after the transition." Appx179, 10:41–45. The '942 patent recognizes that uniformly matching the position of objects throughout the *entire* image "is in many cases impossible, because parallax causes the position shift to be dependent on the object distance." Appx179, 10:45– 48. Thus, "position matching is achieved only in the ROI [region of interest] region

---

[8] Notably, the Decisions do not address Apple's argument that Martin would fall within the same field of endeavor as the patents. Yet, the fact findings support the conclusion that Martin falls within the field of imaging systems including digital cameras [for] generating video output images using two imaging sections having different points of view. Appx32, Appx12–13; *see also* Appx17 (quoting Appx1040), Appx18–19. These findings provide an alternative basis for the Court to affirm that Martin is analogous art or at least remand for the Board to address whether Martin is in the same field of endeavor.

[9] As this Section applies only to the '942 patent, citations refer only to the Decision and documents in IPR2020-00860.

while scale brightness and color are matched for the entire output image area."
Appx179, 10:48–51. In other words, due to the effects of parallax, the '942 patent
settles for matching the position of a particular *region* in a set of images, such as an
object, when switching between images.

As background, the parallax effect was well-understood by the priority date
of the '942 patent. POSITAs recognized that the amount of parallax shift, i.e., the
amount an object appears to move between two images with different points of
view, is based on the distance to the object. *See* Appx78, Appx16302 (Kobayashi),
Figs. 3A, 3B, Appx16313, 6:44–45 ("the parallax P changes depending on the
distance to the target"), Appx16313, 6:25–38, Appx15482–15484 (Durand), ¶ 98.
In other words, when switching between two images from different points of view
(e.g., two cameras in a dual-aperture system), objects closer to the cameras will
appear to shift positions much more dramatically than objects further from the
cameras. This basic principle—the parallax effect—is not in dispute. Indeed, the
'942 patent discusses this reality, and the applicant recognized it during
prosecution of the parent '233 patent. Appx179, 10:45–48 ("[P]arallax causes the
position shift to be dependent on the object distance."), Appx16770 ("artifacts
caused by the parallax effect depend on the specific object distance in a given
image").

The '942 patent recognizes the geometric reality that parallax causes objects in an image to shift different amounts based on each object's distance from the camera and, accordingly, focuses on position matching a particular region in an image, rather than the *entire* image. Such position matching would apparently be achieved (in the context of claim 1) by "shifting" one image relative to the other "according to a distance of an object" in a region. Importantly, however, the '942 patent does not describe how such shifting is performed.

Apple demonstrated, and the Board correctly found, that Martin discloses this "shifting" limitation. *See* Appx85–105, Appx10033–10043 (Petition).[10] Martin describes a computing device that aligns two images captured from different points of view (parallax images) as part of its process for reducing visual discontinuities in a video image sequence. Appx15618, 3:39–46, Appx15477–15480 (Durand), ¶¶ 92–94. Martin discloses capturing "parallax images" using two cameras "displaced from each other," as shown in Martin's Figure 1:

---

[10] Corephotonics' suggestion that Martin is "cumulative" of art considered during prosecution (CP Br. 59) has no bearing on unpatentability and is an unreviewable institution issue under *Thryv*. *See* 35 U.S.C. § 325(d).



**FIG. 1**

Appx15613, Fig. 1 (cameras 10 and 12), Appx15618, 3:39–46, Appx15478–15480 (Durand), ¶ 94.

Martin explains that "[a]s a result of the parallax information contained in the images, an apparent shift of object may exist between different views." Appx15620, 7:8–12. This "apparent shift refers to the distance a point in an image appears to move between images taken from different points of view." Appx15620, 7:8–12. Due to the parallax effect, the *amount* of an object's apparent shift is based on the distance of that object from the camera. *See* Appx78, Appx16302

(Kobayashi), Figs. 3A, 3B, Appx16313, 6:44–45 ("the parallax P changes depending on the distance to the target"), Appx16313, 6:25–38, Appx15482–15484 (Durand), ¶ 98. This basic relationship between the amount of parallax shift and the distance of an object is further confirmed by Martin. Martin highlights the relationship by explaining that, using the "amount of apparent shift of a point in two or more parallax images" and "certain other information, such as the distance between the camera and a point in the image," "quantitative position values may be computed for the point." Appx15620, 7:13–17. Such "quantitative positional information for scene points" (or "position values" for scene points) may then be used to create a "depth map for objects in the scene." Appx15620, 7:23–32; *see also* Appx89–90. In other words, the amount of shift for scene points corresponding to particular objects—which, based on the geometries of parallax is according to the distance to an object—can reveal the depth (distance) for objects throughout a scene.

Martin aligns the parallax images by aligning a particular region with its corresponding region in the other image. *See* Appx15620, 7:46–51 (Martin, cited at Appx89). This is shown in the annotated version of Martin's Figures 3a through 3d, below. Figures 3a and 3b represent two images, Figure 3c illustrates the shift needed to align the images, and Figure 3d shows the aligned images. Martin takes an unaligned image 32 (a succeeding video image in Figure 3b) and manipulates it

until the "same region of interest 34´, albeit as viewed from a different point of view" matches alignment with the region of interest 34 in the reference image 30 (the preceding video image in Figure 3a). Appx15618, 4:51–56.



Appx15615, Figs. 3a–3d (annotated by Durand, Appx15479–15480).

This alignment process may be accomplished by "affine transformation including translation, rotation, scaling and/or any other desired transformation." Appx15618, 4:56–61. Further, alignment may be performed by "pattern matching or feature extraction algorithms" or by "align[ing] the convergence points in the images based on calculated differences between the selected convergence points in the images." Appx15619, 5:8–21. Martin describes that this shifting of one image is based on "transformation including translation." Appx15618, 4:56–59. As

Apple's expert explained, a POSITA would have understood that such a translation is based on a translation parameter, specifically shifting the image in x and y directions based on x and y translation parameters. Appx15482 (Durand), ¶ 97 (citing Appx5804–5805 (Xiong article), equations 17–19). In short, Martin's "pattern matching or feature extraction algorithms" are used to identify the corresponding object between two images, and a translation is then performed to align the images by shifting the relevant x and y coordinates. *See* Appx15481–15482 (Durand), ¶¶ 96–97 (citing supporting evidence, including Appx5623 (Border), ¶¶ 41–42, Appx5700–5702 (Szeliski), Fig. 2.4, Table 2.1, Appx5727–5731 (Szeliski), Fig. 6.2, Table 6.1, Appx5804–5805 (Xiong article), equations 17–19, Appx5791 (Xiong article)).

Based on Martin's disclosures, Apple's Petition explained that Martin's "shift of the succeeding image relative to the preceding image for position matching in the ROIs in critical alignment is dependent on the distance of an object in the succeeding image ROI." Appx10037–10038. More specifically, Apple explained that "[t]he shift in Martin is therefore according to the distance to the object in the succeeding image ROI [region of interest], because *the amount of shift is determined during registration for transforming the succeeding image to the preceding image, which depends on the amount of parallax, which in turn*

*depends on the distance to the object in the succeeding image ROI*." Appx10038 (Petition) (emphasis added); *see also* Appx10040 (Petition).

Before the Board, the parties disputed the meaning of the "shifting" limitation. Appx71–79. Corephotonics argued for a construction that would replace "according to" with "based on." Appx10178–10186 (Patent Owner Resp.). The Board, however, correctly understood that, regardless of the language used, the "actual dispute between the parties" was something different. *See* Appx74 (stating the "actual dispute between the parties concerns whether the shifting *directly* depends on 'a distance of an object,' or *indirectly* depends on 'a distance of an object'"). In effect, Corephotonics argued Apple should be required to demonstrate a calculation using a quantitative value for object distance. *See* Appx76. The Board rejected Corephotonics' arguments and did not adopt an express construction. Instead, the Board analyzed the specification and prosecution history and explained that "[t]he above-quoted disclosures and the prosecution history tend to support the position that translating (i.e., shifting) by a certain number of pixels is *not directly based on a quantitative value for object distance*," thus concluding that the claimed shifting can *indirectly* depend on the distance to the object. Appx76 (emphasis added); *see generally* Appx76–78 (citing Appx16770 (prosecution history), Appx17288–17289, Appx17285, Appx17281 (dictionaries), Appx179, 10:47–48, Appx180, 12:5–8, 12:9–13, Appx16851, ¶ 6). The Board found that "Martin's

teaching of critical alignment, which is based on a distance to an object" met the limitation. Appx104–105 (citing Appx16302 (Kobayashi), Figs. 3A, 3B, Appx16313, 6:44–45, Appx16313, 6:25–38, Appx15482–15484 (Durand), ¶ 98, Appx16872–16873, ¶ 60, Appx17778, ¶ 110).

On appeal, Corephotonics has not re-urged the "based on" construction it proposed, disputed that an indirect relationship between distance and shifting meets this limitation, or challenged the lack of an express construction. *See* CP Br. 51–61. Thus, the issue before this Court is purely a factual question, reviewed for substantial evidence: does Martin shift according to a distance per the Board's understanding of that limitation that an indirect relationship between the object distance and the shifting meets the "according to a distance" limitation.

Corephotonics' opening brief takes a three-fold approach in attempt to dislodge the Board's factual findings. First, Corephotonics imposes an additional requirement to this limitation based on how it believes the Board's understanding of the phrase *should* be understood, and then contends that Martin does not teach that additional requirement. Second, Corephotonics rebuts various aspects of the Board's analysis, none of which actually undermine the Board's findings. And, finally, Corephotonics raises a new argument on appeal, suggesting that the background knowledge of one of ordinary skill in the art, as discussed by Apple's

expert and reflected in Kobayashi, would not apply to Martin. Each of these arguments is addressed below.

### A.    The Board's understanding of the "shifting" limitation does not require a calculation based on a transformation coefficient.

Corephotonics first misinterprets the Board's explanation of this term, contending that "the Board's construction must be (*or, if not, should be*) read to mean that, if 'shifting' is not directly based on distance to an object, then it can only be satisfied indirectly by shifting ***based on a value—a 'transformation coefficient'***—that is itself calculated from parallax that is based on distance to an object." CP Br. 51 (emphases added). This narrow read of the Board's analysis imposes an additional requirement on this limitation: that shifting be based on a "transformation coefficient." *See, e.g.*, CP Br. 51, 53 (arguing a finding "improperly vitiates the 'transformation coefficient' requirement in the Board's own construction"), 59 (arguing "there is no 'transformation coefficient' determined by parallax based on distance to an object (per the Board's construction) used in Martin's critical alignment process"). Using this view of the Board's analysis, Corephotonics contends "Martin does not teach such indirect 'shifting' as defined by the Board" because Martin's shifting "is not performed 'based on transformation coefficients' that are 'determined based on' any 'parallax . . . based on a distance to an object.'" CP Br. 52 (quoting Appx76, Appx78).

Instead, Corephotonics contends Martin's alignment process is "parallax agnostic." CP Br. 52 (quoting Appx10567, 42:24–26).

At the outset, Corephotonics' assertion that Martin is "parallax agnostic" is a quote from its own counsel's characterization of Martin made during the oral hearing. *See* Appx10567, 42:24–26. Attorney arguments are not evidence.

In any event, the Board did not interpret the "shifting" limitation to require a translation based on a "transformation coefficient." *See* Appx75–79. Instead, in rejecting Corephotonics' argument that "shifting" must be directly based on an object's distance, the Board referred to the "transformation coefficients" discussed in the '942 patent to explain the similarity between how the '942 patent "shifts" an image, as compared to how Martin shifts an image, and to ensure the specification's disclosure would be encompassed by the claim language. *See* Appx75 (discussing Appx180, 12:4–15 and Appx16770), Appx77–79. Indeed, as the Board explained, the "transformation coefficient" in the '942 patent "indicates a translation between matching points in the two images" and is "based on the parallax effect shown between the two images, which is, *in turn*, based on the object distance." Appx77–78. That is, the Board was pointing out the logical layers used in the '942 patent that illustrate how the specification's disclosure of the claimed "shifting" is ultimately done according to an object's distance—but not directly as a calculation of a quantitative value for object distance. *See* Appx78.

Nowhere in the Board's analysis did the Board construe the "shifting" limitation to require that the translation information must be converted into a "transformation coefficient."

To the extent Corephotonics raises a broader argument (beyond its "coefficient" argument) that Martin does not shift images according to a distance of an object even indirectly, tellingly, Corephotonics fails to cite any testimony from its expert to support that position. *See* CP Br. 52–53. The only evidence Corephotonics cites is the basic disclosure from Martin that images may be obtained from a variety of sources, including via computer-generated images. *See* CP Br. 53 (citing Appx15618, 3:55–67, 4:10–24). But regardless of what else Martin discloses, there is no question that it discloses using images from two cameras, as shown in Figure 1 (Appx15613). Moreover, the fundamental principle of parallax does not change whether the images come from a set of two cameras, one camera that moves to another point of view, or a computer. An object can be near or distant in a computer-generated image, just as it can be in an image taken with a camera. And, the same parallax principle would logically exist in those computer-generated images, too. It is the different point of view that causes the parallax effect—not the image source. Thus, given Corephotonics' lack of evidence or logical underpinning for this argument, the Board was correct to adopt

Apple's position, which was supported by extensive record evidence, including expert testimony.

## B. Neither Apple nor the Board relied on Martin's "depth map" to teach the "shifting" limitation.

Corephotonics next disputes findings that were never made. Corephotonics attacks Martin's "depth map" and "quantitative position values" (CP Br. 54–55), but those arguments are, respectfully, a distraction.

As to the "depth map," Apple did not rely on Martin's "depth map" to teach this limitation, nor did the Board. Instead, Apple discussed the "depth map" to illustrate the basic parallax principle that the apparent shift of an object due to parallax is based on the distance of the object in the image, and thus may be used to calculate a depth map. *See* Appx10037–10038 (Petition) (citing Appx15620, 7:8–12, 7:30–32). The Board addressed Martin's "depth map" in that context, i.e., as further evidence that parallax reflects object distance.[11] And, the Board compared it to the '942 patent's process for translating movement into depth, which similarly provides a specific value for depth *after* translation. Appx78 (citing Appx180, 12:9–13), Appx104 (explaining object distance is similarly an "unknown value" in the '942 patent).

---

[11] Though not directly relevant, Corephotonics incorrectly asserts Martin's depth map "does not even reveal distance from a camera to an object—just distance between 'objects in the scene.'" CP Br. 54. Martin discusses depth when discussing *heights* of objects in aerial images. Appx15620, 7:17–34.

Indeed, as discussed above, Apple agrees that the "apparent shift" in Martin refers to the "distance a point in an image appears to move between images taken from different points of view"—not the distance between the camera and a point in the image. Appx15620, 7:10–13; *see* CP Br. 55. Likewise, Apple agrees that Martin's "depth map" is generated *after* alignment. Appx15620, 7:5–22 (explaining how "certain quantitative information may be extracted from the aligned parallax images"). But these facts are beside the point. Neither Apple nor the Board relied on Martin's "depth map" as disclosing the "shifting" limitation. Instead, Martin's alignment teaches the "shifting" limitation, and the "depth map" helps demonstrate what a POSITA would have understood regarding that alignment process, namely, that shifts are according to distance.

Corephotonics' discussion of Martin's "quantitative position values" is similarly irrelevant. *See* CP Br. 55–56. Again, Apple did not rely on Martin's "quantitative position values" as teaching the "shifting" limitation, nor did the Board.

### C.    Corephotonics' new argument regarding Kobayashi is forfeited and, in any event, unavailing.

Corephotonics raises a new argument on appeal: the basic principle reflected in Kobayashi that the amount of parallax depends on the distance of an object is "inapplicable to Martin's specific disclosure" because Martin does not discuss the distance between two cameras. *See* CP Br. 56–58. Specifically, Corephotonics

attacks the relevance to Martin of the background evidence (Kobayashi) that Apple's expert relied on to support his testimony that a POSITA would have understood that "parallax is based on distance to an object." Appx104, CP Br. 56–58.

As the Board correctly explained, the Kobayashi background reference demonstrates that "the parallax P changed depending on the distance to the target." Appx16313, 6:36–38, 6:44–45. Kobayashi even provides an equation defining the amount of parallax as a product of "distance to the target": "P=d x f/L" where "P" is parallax and "L" is the "distance to the target." Appx16313, 6:36–38, 6:44–45.

Before the Board, Corephotonics had no real argument to dispute the implications of Kobayashi, other than to generally state that "Kobayashi, at best, teaches distance can be *calculated* from 'object shift in the parallax images.'" Appx10216 (Patent Owner Resp.) (emphasis in original). That statement, of course, proves Apple's point: the amount of parallax is inextricably tied to object distance.

Now, Corephotonics attempts to craft a new argument that Kobayashi's basic principles of parallax would not apply to Martin. But Corephotonics did not raise that argument (or evidence to support it) before the Board, and Corephotonics

cannot raise it for the first time on appeal. *See Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1174–75 (Fed. Cir. 2019).[12]

But regardless, Corephotonics' position is not borne out by the evidence. Martin discusses the relationship between parallax and the distance to an object, and expressly notes that quantitative position values could be computed if "certain other information" is known. Appx15620, 7:13–17. Martin does not purport to catalogue every variable related to parallax information. Nor is there some requirement that Martin do so, particularly where the principle is well-understood in the art. Indeed, the Board discredited Corephotonics' expert on this point, noting Dr. Saber "cites nothing to support his position that a POSITA could not calculate object distance from parallax, particularly in light of Martin's acknowledgement that additional inputs might be required." Appx104 (citing Appx17778–17779, ¶¶ 110–112). Thus, Corephotonics' argument that "Martin never speaks of or discloses anything . . . regarding the distance between cameras or how to use that value to critically align to account for apparent shift" is inapposite. The only testimony from its expert that Corephotonics cites for this point recites what

---

[12] Corephotonics argued (indeed, admitted) an object's shift is "***related*** to how far that object is from the camera(s)," but contended distance is "not ***determinative*** of the calculated object shift." Appx10212–10213. It later walked back its argument that distance must be "determinative." *See* Appx10312–10313. But, in any event, Corephotonics did not address Kobayashi's equation or explain why it would not be relevant to Martin.

Martin already acknowledges, i.e., that the relationship of parallax and distance to an object involves other variables. *See* CP Br. 57 (citing Appx17778–17780), Appx17778 (Saber Decl.), ¶ 111.

Further, Corephotonics' new argument forgets that Martin is presented *in combination* with Golan. Corephotonics' premise is that the parallax in Martin's system cannot relate to distance of an object because the distance between Martin's two cameras is not known (allegedly unlike Kobayashi, where distance between cameras is a known value). *See* CP Br. 56–58. But, in the combination, Golan already includes fixed cameras and a known distance between its two cameras. *See* Appx15608, ¶ 38 (noting electronic calibration is performed "to determine the alignment offsets between wide image sensor array 110 and tele image sensor array 112" and that "the spatial offsets between wide image sensor array 110 and tele image sensor array 112 are fixed"). Thus, whether Martin has "defined locations of the cameras" or a variable representing the distance between cameras (CP Br. 58) is irrelevant because Golan has exactly that. Corephotonics' new argument fails to address the references as set forth in the proposed combination.

### D. Corephotonics' purported motivation arguments merely reiterate the same factual disputes.

In one final effort to overturn the Board's factual analysis, Corephotonics briefly contends the Board did not adequately explain why a POSITA would have combined Golan and Martin with respect to the "shifting" limitation. CP Br. 59–

60. But substantial evidence supports the Board's thorough explanation why one of skill would have been motivated to combine Golan and Martin as proposed by Apple. *E.g.*, Appx90–93. Corephotonics' undeveloped motivation argument simply rehashes the same factual disputes already addressed above (Corephotonics' disagreement with the Board's finding that Martin's shifting depends on distance).

For example, Corephotonics faults the Board for purportedly not addressing why one of ordinary skill in the art would have been "motivated to combine Golan and Martin's specific *non-distance-dependent shifting techniques* in the dual-aperture camera system as claimed." CP Br. 59 (emphasis added). That is not a motivation argument; it is the same factual disagreement regarding whether Martin's shifting depends on distance. Similarly, Corephotonics' parenthetical at 59–60 suggesting the Board's motivation analysis "did not address a POSITA's motivation to combine Golan with Martin's purported disclosure of 'shifting' *as construed by the Board that used transformation coefficients*" is likewise not a separate motivation argument; it is, again, an argument that improperly reads an additional requirement into the Board's analysis, then faults the Board for failing to apply that requirement. *See supra* Section III.A.

Accordingly, the Court should disregard these arguments for the reasons above: Martin's alignment process shifts an image according to an object's

distance, and the Board did not construe the "shifting" limitation as requiring "transformation coefficients."

## CONCLUSION

Substantial evidence supports the findings that Golan and Martin are analogous art that a POSITA would have been motivated to combine in such a way to meet the challenged limitations. For the reasons above, the Board's Decisions should be affirmed. Alternatively, the Court should remand as needed, as noted above.

Respectfully Submitted,

**HAYNES AND BOONE, LLP**

*/s/ Debra J. McComas*
Debra J. McComas
Andrew S. Ehmke
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Phone: (214) 651-5375
Fax: (214) 200-0525
*Debbie.McComas@haynesboone.com*
*Andy.Ehmke@haynesboone.com*

David W. O'Brien
Hong Shi
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Phone: (512) 867-8457
Fax: (512) 867-8613
*David.Obrien@haynesboone.com*
*Hong.Shi@haynesboone.com*

Angela M. Oliver
800 17th Street NW, Suite 500
Washington, D.C. 20006
Phone: (202) 654-4552
Fax: (202) 654-4252
*Angela.Oliver@haynesboone.com*

**Attorneys for Appellee Apple Inc.**

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because:

■    this brief contains **13,948** words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2.    This motion complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because:

■    this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

*/s/ Debra J. McComas*
Debra J. McComas