**Nos. 22-1340, -1341**

# United States Court of Appeals
# for the Federal Circuit

COREPHOTONICS, LTD.,

*Appellant,*

*v.*

APPLE INC.,

*Appellee.*

Appeals from the Patent Trial and Appeal Board in *Inter Partes* Review Nos.
IPR2020-00487 and IPR2020-00860

## REPLY BRIEF OF APPELLANT COREPHOTONICS, LTD.

Marc A. Fenster
mfenster@raklaw.com
Neil A. Rubin
nrubin@raklaw.com
James. S. Tsuei
jtsuei@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
(310) 826-7474

October 24, 2022

*Counsel for Appellant
Corephotonics, Ltd.*

## CLAIMS FROM PATENTS AT ISSUE

### Patent No. 9,661,233 (IPR2020-00487) (Appx161)

1. A multiple aperture zoom digital camera, comprising:

a) a Wide imaging section that includes a Wide sensor and a fixed focal length Wide lens with a Wide field of view (POV), the Wide imaging section operative to output a Wide image;

b) a Tele imaging section that includes a Tele sensor and a fixed focal length Tele lens with a Tele POV that is narrower than the Wide POV, the Tele imaging section operative to output a Tele image; and

c) a camera controller operatively coupled to the Wide and Tele imaging sections and configured to reduce an image jump effect seen in video output images and to provide continuous zoom video output images by executing registration between the Wide and Tele images for performing position matching to the video output images when switching from an output of the Tele imaging section to an output of the Wide imaging section or vice versa.

### Patent No. 10,326,942 (IPR2020-00860) (Appx181)

1. A multiple aperture zoom digital camera, comprising:

a) a Wide imaging section that includes a Wide sensor and a fixed focal length Wide lens with a Wide field of view (FOV), the Wide imaging section operative to output a Wide image;

b) a Tele imaging section that includes a Tele sensor and a fixed focal length Tele lens with a Tele FOV that is narrower than the Wide FOV, the Tele imaging section operative to output a Tele image; and

c) a camera controller operatively coupled to the Wide and Tele imaging sections and configured, when providing video output images, to:

reduce an image jump effect seen in the video output images when switching from a Wide image to a Tele image by shifting the Tele image relative to the Wide image according to a distance of an object in a Tele image region of interest (ROI), and/or

reduce an image jump effect seen in the video output images when switching from a Tele image to a Wide image by shifting the Wide image relative to the Tele image according to a distance of an object in a Wide image ROI.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2022-1340, -1341 |
| **Short Case Caption** | Corephotonics, Ltd. v. Apple Inc. |
| **Filing Party/Entity** | Appellant Corephotonics, Ltd. |

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/24/2022

Signature:     /s/ Marc A. Fenster

Name:          Marc A. Fenster

FORM 9. Certificate of Interest

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Corephotonics, Ltd. | | Samsung Electronics Benelux B.V. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| C. Jay Chung (formerly of Russ August & Kabat LLP) | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Corephotonics, Ltd. v. Apple Inc., Case No. 5:19-cv-04809-JD (N.D. Cal.) | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

iv

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTEREST ................................................................. ii

TABLE OF AUTHORITIES ................................................................. vi

INTRODUCTION ................................................................................. 1

ARGUMENT ........................................................................................ 5

I.  The Board's Consideration Of Apple's Belated Analogous Art Arguments Was Reversible Error ........................................................................ 5

II. The Board's Analogous Art Findings Erroneously Departed From Apple's Belated Analogous Art Contentions And Were Not Supported By Substantial Evidence .......................................................................... 13

III. The Board Erred By Relying On Martin To Teach The "Shifting" Limitation In The '942 Patent Claims ..................................................... 17

CONCLUSION ................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arendi S.A.R.L. v. Apple Inc.*,
  832 F.3d 1355 (Fed. Cir. 2016) ........................................ 16

*Belden Inc. v. Berk-Tek LLC*,
  805 F.3d 1064 (Fed. Cir. 2015) ........................................ 12

*Dell Inc. v. Acceleron LLC*,
  818 F.3d 1293 (Fed. Cir. 2016) ........................................ 13

*EmeraChem Holdings, LLC v. Volkswagen Grp. Of Am., Inc.*,
  859 F.3d 1341 (Fed. Cir. 2017) ........................................ 23

*In re Bigio*,
  381 F.3d 1320 (Fed. Cir. 2004) ...................................... 3, 7

*In re Clay*,
  966 F.2d 656 (Fed. Cir. 1992) .......................................... 6

*In re IPR Licensing, Inc.*,
  942 F.3d 1363 (Fed. Cir. 2019) ......................................... 5

*In re Lee*,
  277 F.3d 1338 (Fed. Cir. 2002) .................................... 6, 17

*In re Magnum Oil Tools Int'l, Ltd.*,
  829 F.3d 1364 (Fed. Cir. 2016) ........................................ 23

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
  821 F.3d 1359 (Fed. Cir. 2016) ..................................... 7, 12

*Pfizer Inc. v. Chugai Pharmaceutical*,
  IPR2017-01357, Paper 56 (P.T.A.B. Nov. 28, 2018)........................ 10

*Provisur Techs., Inc. v. Weber, Inc.*,
  50 F.4th 117 (Fed. Cir. 2022) ................................................................ 5

*Qualcomm Inc. v. Intel Corp.*,
  6 F.4th 1256 (Fed. Cir. 2021) .............................................................. 13

*SAS Institute Inc. v. Iancu*,
  138 S. Ct. 1348 (2018) ........................................................................... 7

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) ........................................................... 17

*Valmont Indus., Inc. v. Lindsay Corp.*,
  730 F. App'x 918 (Fed. Cir. 2018) ........................................................ 8

*Wasica v. Con't Auto Sys.*,
  853 F.3d 1272 (Fed. Cir. 2017) ................................................... passim

*WBIP, LLC v. Kohler Co.*,
  829 F.3d 1317 (Fed. Cir. 2016) ........................................................... 23

## **INTRODUCTION**

Apple's response confirms that reversal (or at minimum, vacatur) is warranted.

Apple does not substantively dispute that it impermissibly changed legal theories of analogousness in reply after institution and that the Board legally erred by relying on those improper new arguments in its final obviousness decision. Instead, Apple's main protest is that reversing on this ground would impermissibly attack through a "back-door" the Board's unreviewable decision to institute trial. According to Apple, reversal of the Board's final written decision would mean that Apple failed to make out a *prima facie* case of obviousness from the get-go. In other words, deciding that the Board got it wrong now means that the Board was incorrect to find a reasonable likelihood of invalidity at institution.

Apple's circular logic is clearly wrong. The statutory bar on appellate review of institution decisions does not mean that this Court is barred from finding error in final decisions of the Board that *also* existed at institution. If it did, this Court's appellate review would be rendered meaningless—the Board could simply relabel its institution decision as "final" to insulate itself from appellate review. More importantly, this Court has already decided that impermissible "shifting" of arguments is grounds for reversal and not barred by statute. *See, e.g.*, *Wasica v. Con't Auto Sys.*, 853 F.3d 1272, 1286 (Fed. Cir. 2017) (citing relevant cases).

Apple's attempts to justify its "shifting arguments" on analogousness are equally flawed. For instance, Apple suggests that it can raise any new argument it wants at any time during IPR as long as such new arguments are not "inconsistent" with old arguments in the IPR petition. *See* Apple Brief ("RB") at 38 ("RB38"). Apple also suggests that it was allowed to repackage arguments and evidence purportedly raised in other sections of its petition (e.g., when discussing motivation to combine) and repurpose them at any time during IPR to replace arguments made in other portions of its IPR petition addressing other elements of obviousness (e.g., the one, and only one, argument Apple presented on analogousness in its petition). But neither suggestion is the law.

An IPR petitioner in reply may only "explain[] how its original petition was correct"—i.e., how its original theory of invalidity presented with particularity in its petition is correct. *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1286 (Fed. Cir. 2017). Apple advanced only one (legally erroneous) basis to theorize that Golan and Martin qualified as analogous prior art under § 103—the references were in the same field of invention *as each other*. That incorrect theory was the only one identified with particularity in Apple's petition, and, thus, the one to which Apple was bound moving forward in the IPR. Apple could present new evidence and arguments to support *that* particular theory; it was not free to present *other* new arguments and evidence to support a *different* analogousness theory, regardless of

whether such new arguments, evidence, or theory did not contradict Apple's original argument or were discussed to support other elements of obviousness. And Apple certainly stepped over that line here with respect to, for example, the Martin reference, for which Apple (and the Board) ultimately relied on an entirely "separate test[]" for analogousness than the "same field of endeavor" test Apple invoked with particularity in its petition. *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004).

Apple's response also fails to rehabilitate the Board's erroneous reliance on Martin to teach the "shifting … according to distance of an object" element required by the claims of the '942 patent challenged in the '860 IPR. Apple concedes a key point— that "the 'apparent shift' in Martin refers to the 'distance a point in an image appears to move between images taken from different points of view'—**not the distance between the camera and a point in the image**." RB61 (citations omitted).[1] That is precisely what Corephotonics has been arguing all along. Martin's critical alignment process is performed based on that "apparent shift" and that "apparent shift" is, as Apple now concedes, "**not** the distance between the camera and a point in the image." In other words, Martin's critical alignment process that the Board relied on to teach the "shifting" limitation is done according to an "apparent shift" variable that (now concededly) is not based on or calculated

---

[1] All emphases added herein unless otherwise noted.

according to distance to an object, as the relevant claims of the '942 patent require. And that is true regardless of how the Board's construction is interpreted. Apple objects to Corephotonics' focus on "transformation coefficients," but under any reading of Board's construction, to satisfy the claims, shifting must be done based on *something* (labeled "transformation coefficients" or otherwise) that is "determined based on … distance to the object." Appx78. There is no dispute that Martin's critical alignment process is determined based on "apparent shift" which, as Apple now concedes, is ***not*** the distance between the camera and an object.

Apple's additional concessions confirm that reversal is warranted, too. For example, Apple also now admits that Martin's depth map and discussion of quantitative values are irrelevant, not the basis for the Board's opinion, and should not be a basis relied on by this Court to affirm. *See, e.g.*, RB60 ("'depth map' and 'quantitative position values" are an irrelevant "distraction"); RB61 ("Apple agrees that Martin's 'depth map' is generated *after* alignment" (emphasis by Apple)); RB61 ("Apple did not rely on Martin's 'quantitative positions values' as teaching the 'shifting' limitation, nor did the Board."). That confirms Corephotonics' position— Martin's critical alignment algorithm is performed according to an "apparent shift" that is not the distance to an object, as the claims of the '942 patent require, and Martin's discussion of a "depth map" and "quantitative values" does not (and

cannot) teach otherwise.  Reversal or vacatur of the final written decision in the '860 IPR is thus independently warranted too.

## ARGUMENT

### I.    The Board's Consideration Of Apple's Belated Analogous Art Arguments Was Reversible Error

There is no merit to Apple's manufactured claim that Corephotonics' appeal of the Board's *final* written decision is an impermissible "back-door" challenge to *institution*.  RB23 (quotation marks and citation omitted).  Apple even admits that this Court can review (and frequently has reviewed) whether the Board improperly allowed, and then improperly relied upon, a critical argument that an IPR petitioner failed to raise in an IPR petition (though the parties disagree on the standard for that review).[2]  RB21-22 (citing cases); *see also* BB33-35 (discussing the same or similar cases).  And that is exactly what happened here.

---

[2] Apple contends that whether the Board improperly relied on new arguments during the course of an IPR below is "reviewed for an abuse of discretion."  RB21.  Apple is incorrect.  As this Court has held, "[w]hether the Board improperly relied on new arguments is reviewed *de novo*."  *In re IPR Licensing, Inc.*, 942 F.3d 1363, 1369 (Fed. Cir. 2019).  The case Apple cites in support of its narrower proposed standard of review is inapposite.  *See Provisur Techs., Inc. v. Weber, Inc.*, 50 F.4th 117, 122 (Fed. Cir. 2022) (applying abuse of discretion standard of review to Board's decision on "motion to exclude [a party's] reply evidence").  And this case is not about the particularity requirement of § 312(a)(3) as Apple contends.  The issue here is not whether Apple identified an analogousness ground with particularity in its petition— it did.  The problem is that the ground Apple did identify was legally erroneous and, recognizing its fatal error well into the IPR, Apple belatedly and improperly tried to shift its arguments.  Under this Court's precedent and Supreme Court precedent,

Apple does not substantively contest that establishing analogousness of prior art is so critical to establishing obviousness that it is a *prima facie* requirement to establish obviousness or a "prerequisite" to do so. *In re Clay*, 966 F.2d 656, 658 (Fed. Cir. 1992). Instead, Apple attempts to undermine this Court's directive in *Clay* (and *Bigio*) by claiming that *KSR*'s flexible test somehow rewrote the law established by those cases. RB24–25. That is not right. As Apple concedes, "this Court has continued to apply the two-prong analogousness art standard articulated in *Clay*" after *KSR*—i.e., the "prerequisite" showing required by this Court in *Clay*. Thus, imposing that "prerequisite" as a *prima facie* requirement on IPR petitioners is not a "heightened burden" (RB24) different from any imposed on any other patent challenger (in court or otherwise).

Nor does Apple contest that it is a "strict requirement" and "of the utmost importance" that petitioners in IPRs identify "with particularity" the grounds on which their challenge to each claim is based, so that, as the Supreme Court has held, IPRs must proceed from start to finish "in accordance with or in conformance to the

Apple was bound to the one particular analogousness argument raised in its petition—it cannot raise new analogousness theories later on just because that one failed. And even if abuse of discretion review applied, any failure (like the Board's failure here) to adhere to "precedent is both legal error and arbitrary agency action" under the APA, which would be an abuse of discretion—a fact Apple never contests. *In re Lee*, 277 F.3d 1338, 1344 (Fed. Cir. 2002). (That is also the "earlier precedent[]" (RB22) that controls here. *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988)).

petition" and the "petitioner's contentions" in the petition "define the scope of the litigation all the way from institution through to conclusion." *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348, 1356-57 (2018); *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016).

Thus, as Apple implicitly concedes, it was required to identify the grounds for analogousness of Golan and Martin as prior art with particularity in its IPR petition. And Apple did.

In its IPR petitions, Apple identified with particularity *one* legal theory to support its contention that Golan and Martin were analogous art capable of invalidating the challenged claims of the '233 and '942 patents under § 103—the references were in the same field of invention *as each other*. Appx1023–1024; Appx10023–10024 (same). That theory, of course, as Apple now also admits, was legally insufficient to establish analogousness. *See also Bigio*, 381 F.3d at 1325 (correct legal framework for "same field of endeavor" analogousness test is "whether th[e] references are 'analogous' to 'the claimed invention'"). But whether Apple's only theory of analogousness was legally erroneous was not the error committed by the Board—allowing Apple to change course in middle of the IPR in reply and advance an entirely new theory of analogousness. That subsequent error is not anything related to institution by the Board—it was error committed *after* institution.

Thus, the import of Apple having failed to make out a *prima facie* case of obviousness in its petition is not a "back-door" attack on the Board's institution decision, but proof that the Board improperly invalidated the patents in its final written decision. The nonprecedential case from which Apple plucked that phrase is not even aligned on the facts. *See Valmont Indus., Inc. v. Lindsay Corp.*, 730 F. App'x 918, 923 (Fed. Cir. 2018) (rejecting argument that new evidence should be excluded, not because shifting arguments, but because it purportedly was required by PTO rules at the institution stage as "back-door attempt" to challenge institution of the PTO). In other words, the lack of a *prima facie* case sans Apple's improperly belated analogousness argument establishes that the Board's error (challenged on appeal) of allowing those arguments was not harmless. Without those new arguments, Apple's obviousness argument fails as a straightforward matter of law. The Board's final decision should thus be reversed. That conclusion has nothing to do with institution.[3]

Apple's claim that it "did not 'shift' arguments, but rather clarif[ied] its position" on analogousness is also without merit. RB38. At its heart, Apple's position is that, absent "inconsistencies" with its petition, new arguments should be

---

[3] As a practical matter, Apple's position also makes little sense. If Apple's theory were correct, seeking reversal of any issued decision in a final written decision would be barred as a "back-door" attempt to challenge institution if the same issue was also addressed in the Board's institution decision. That obviously is incorrect.

allowed. RB38. In short, according to Apple, even though it argued analogousness distinctly in its petition, as long as its new positions on analogousness in reply are not otherwise inconsistent or were presented elsewhere in the petition to support different requirements of obviousness, then its reply was permissible. For example, Apple repeatedly claims that it discussed the "field of endeavor" and "problem" being addressed (i.e., the two *Clay* factors) elsewhere in its petition when addressing motivation to combine. *See* RB35-37. Thus, as Apple see it, this whole "appeal rests on a technicality" because the issue is "fair notice" and Corephotonics got that here. RB32, RB35.

But that is not the law. As this Court has held, an IPR petitioner in reply may only "explain[] how its original petition was correct"—not raise different theories than presented in the petition. *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1286 (Fed. Cir. 2017). Simply put, an IPR petitioner can overcome a patent owner's criticisms of a petition's contentions by presenting additional evidence in reply to support *those original contentions* (here, Apple's incorrect analogousness theory presented in its petition), but a petitioner cannot overcome such criticisms by "[s]hifting arguments" to new ones (like the new theories of analogousness presented by Apple in reply). *Wasica*, 853 F.3d at 1286-87; *see also Pfizer Inc. v. Chugai Pharmaceutical*, IPR2017-01357, Paper 56, at 19 (Nov. 28,

2018) (the "introduction of new evidence in the course of the trial is to be expected"—"shifting of arguments is not").

Nor was there "fair notice" here. Apple specifically identified one (and only one) argument to establish analogousness—Martin and Golan were in the same field of invention *as each other*. Appx1023–1024; Appx10023–10024 (same). That is what Corephotonics (and its expert) were put on notice of by the petition, not everything else under the sun in the petition advanced by Apple elsewhere to meet other requirements for obviousness (like motivation to combine). Indeed, there can be no reasonable dispute that, at minimum, Apple in reply (and the Board in its final written decision) improperly relied on an entirely "separate test[]" for analogousness than the "same field of endeavor" test Apple invoked in its petition—that Martin was "reasonably pertinent to the particular problem" addressed by the challenged patents. *See* Appx1280–1282; Appx10266–10267. Apple claims that change in course is irrelevant because those two separate tests are not "mutually exclusive" and a prior art reference can satisfy both. RB37. Perhaps a reference could. But that is not the point. Relying exclusively on just *one* of those two tests in an IPR petition (like Apple did here) does not fairly invoke (and provide fair notice) that the *other* "separate test[]" is the asserted basis for analogousness in the petition. That is the epitome of impermissible "shifting arguments," just like relying on a new evidentiary theory of obviousness in reply after an original theory is scuttled by a

10

patent owner in response. *See Wasica*, 853 F.3d at 1286 (finding such shifting argument to be improper).

Apple's failure-to-exhaust argument is likewise lacking. When confronted with Apple's improper belated argument and evidence (including Apple's "new expert analysis"), Corephotonics requested that the Board reject them as "untimely" and "completely new." Appx1318–1320; Appx10314–10315 (same). Corephotonics also explained to the Board that not rejecting Apple's belated arguments and evidence would be especially unfair because the Board's rules "prohibited [Corephotonics] from submitting expert opinion or factual evidence of its own" on sur-reply "to dispute Apple's new arguments and evidence." Appx1318–1320 (citing PTAB Consol. Tr. Prac. Guide, 73 (November 2019)); Appx10314–10315. That was sufficient to preserve the issue—it was fairly and timely presented, and the Board declined to reject Apple's belated evidence and argument. Apple does not challenge the veracity of those facts or their sufficiency to preserve appellate review. Instead, Apple complains that Corephotonics did not *also* exhaust other potential avenues to potentially mitigate prejudice from Apple's bad acts. But Apple points to no caselaw (or rule) that requires a party to lessen potential prejudice from improper arguments in reply by seeking leave to dispense with rules limiting sur-reply topics rather than directly asking to reject such untimely and improper arguments—because there is no such case or rule. Indeed, even the Board did not

raise any exhaustion issues, and the one case Apple cites (*Belden*) is inapposite—here, unlike the aggrieved party in *Belden*, Corephotonics made a "concrete, focused request[]" to the Board to reject the untimely evidence and explained to the Board why, under the Board's rules, Corephotonics lacked a meaningful opportunity to respond. *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1081–82 (Fed. Cir. 2015). Apple's solution of simply asking the Board to waive all the rules and allow all argument to cure one party's (here, Apple's) unilateral decision to violate the rules (and precedent and statute) makes little sense and certainly does not bar appeal.

At bottom, Apple redrafted its analogousness contentions in reply, changing its legal theory and associated interpretations of the prior art and patents while also presenting new expert evidence—all for which Corephotonics was forbidden to present responsive expert testimony. That was clearly impermissible. *See, e.g.*, *Wasica*, 853 F.3d at 1286–87 (improper "shifting arguments" when petitioner attempted to bolster conclusory and incorrect assertions in petition with citations to "different passage" of prior art and theory for modification); *Intelligent Bio-Sys.*, 821 F.3d at 1367, 1369–70 (similar). The Board's decision to allow and consider Apple's belated analogous-art contentions was legal error and an abuse of discretion that violated the IPR statutory requirements, Board regulations, Supreme Court and this Court's precedent, and the APA. The Board's final written decisions in both the '487 and '860 IPRs should therefore be reversed (or at minimum, vacated).

## II. The Board's Analogous Art Findings Erroneously Departed From Apple's Belated Analogous Art Contentions And Were Not Supported By Substantial Evidence

The Board materially departed from Apple's belated analogous-art arguments in its final written decisions in both the '487 and '860 IPRs. Apple claims otherwise, not based on what the Board said when discussing analogousness, but other statements elsewhere in the Board's opinion that were supposedly "consistent" with Apple's position. RB42. But what the Board said matters; the Board's actual rationale is what this Court reviews. This Court (and petitioners) are not soothsayers that must discard what the Board actually said on a topic and cobble together a new opinion on a topic on behalf of the Board from dissected pieces of the Board's rationale on other topics. *See, e.g.*, *Qualcomm Inc. v. Intel Corp.*, 6 F.4th 1256, 1262, 1264-65 (Fed. Cir. 2021) (setting aside final decision that raised new contention to support invalidity for first time in final written decision); *Dell Inc. v. Acceleron LLC*, 818 F.3d 1293, 1301 (Fed. Cir. 2016) (same). Apple's attempt to rehabilitate the Board's opinion based on statements elsewhere in the Board's decision that might be more consistent with Apple's new analogousness arguments is thus irrelevant. Those other statements do not change what the Board actually found regarding analogousness. And those findings clearly departed from Apple's new arguments and were not supported by substantial evidence. *See, e.g.*, BB43–51.

Indeed, Apple concedes that the Board erred when declaring that the problem being addressed in Martin was related to "cameras that have different *fields* of view" (versus, *points* of view). Appx33; Appx103; *see* RB44–47. And there is no dispute that the Board's error in that respect was clear error. Apple simply suggests that it is so clear and so wrong that it must be a "typographical" or "clerical" oversight. RB47-48. But that would be quite the "typographical" error for the Board to make. *Field* of view versus *point* of view are critical concepts in this field, and there is no dispute that Golan, but not Martin, discusses them. Thus, rather than being a simple typographical error, it seems more likely that the Board was confused and misunderstood what Golan disclosed rather than Martin. That is not a clerical oversight—it is substantive error.

And this is particularly so because the error does not stand alone. The Board also inexplicably departed from Apple's contention that the pertinent field of endeavor was related to "video" and "imaging sections," and limited the field to performing "digital" and "continuous electronic" zoom. *See* BB43–44. Apple tries to cabin these errors as not inconsistent with other portions of the Board's opinion. *E.g.*, RB27–31. But in combination, what they really show is clear and unmistakable error by the Board warranting reversal (or, at minimum, vacatur). Indeed, there is no indication that Golan's one-time calibration was directed to overcoming the jump problem while "zooming" during video output. And for Martin, there is no record

support that the reference addresses or solves problems for "dual-aperture cameras"—Martin does not even require multiple cameras (or any cameras at all). *See, e.g.*, Appx15618 at 3:41–51, 3:55–67, 4:10–24. Nor is there any "switching between cameras" required by Martin—the same camera (or no camera at all) can be used in Martin's system to generate the parallax images it attempts to transform into 3-D. *See* Appx15618 at 3:55–66, 4:10–24.

Plus, Martin was not directed at solving any issues related to "jump" discontinuities during *video zooming* to begin with, which was indisputably a critical aspect of the problem the inventors of the '233 and '942 patents sought to overcome. *See, e.g.*, Appx176 at 3:52–58; Appx179–180 at 10:35–11:29; *see also* Appx1516–1519 at 37:8–38:1, 38:18–39:1, 39:24–40:7; Appx1542 at 63:1–12. And solving that problem during video zooming was a critical reason that led to issuance of the '233 patent over Golan and prior art that taught the same conventional image shifting techniques as Martin. *See* Appx5314–5316 (explaining how "the known art does not teach to use position matching for solving the aforementioned problem as part of the zooming process in video imaging, as claimed."); Appx16771; Appx17759–17761; *see also* Appx1517 at 38:2–17.

In response to these facts, Apple also claims that the test for analogousness must be "flexible." RB29. But flexibility cannot rewrite the references. Martin lacks all of the above features and, unlike the patents, was only concerned with

"overcoming one or more problems associated with the prior art three-dimensional image display systems and methods," which has nothing to do with continuous video zooming or dual-aperture camera technology. Appx15617 at 2:60–62; *see also* Appx18054 at 222:4–16 (Dr. Durand, Apple's expert, admitting that Martin does not teach about continuous zoom or continuous video zoom or continuous electronic zoom); Appx1523 at 44:5–24 (discussing how the patents were aimed at eliminating the problem of parallax effect during video zooming but Martin was directed to a different problem of using or preserving parallax to create 3-D displays); Appx1524 at 45:12–26.

There was no proper basis for the Board to depart from Apple's (improper) new analogousness contentions, nor was there substantial record evidence to support the Board's conclusion that Golan was in the same field of endeavor and Martin was reasonably pertinent to the same problem faced by the inventors of the '233 and '942 patents for reasons different than those advanced by Apple. Those errors and lack of substantial evidence independently require reversal of the Board's final written decisions in the '487 and '860 IPRs or, at minimum, vacatur. *See Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1366 (Fed. Cir. 2016) (reversing finding of invalidity

when there was no substantial evidence in the record upon which the Board could rely on remand to support is conclusions).[4]

## III.    The Board Erred By Relying On Martin To Teach The "Shifting" Limitation In The '942 Patent Claims

The Board held that "the combination of Golan and Martin sufficiently teaches the … 'shifting' portion of the [claimed inventions] based on Martin's teaching of critical alignment, which is based on a distance to an object." Appx104. Apple agrees: "Martin's alignment teaches the 'shifting' limitation." RB52. The Board's reasoning, however, was premised on its conclusion that "object shift is based on object distance in Martin." Appx104. There is no dispute that the object shift in Martin is defined as the "apparent shift" value. Appx15620 at 7:10–13; *see* BB17-19. Before the Board, Apple even expressly argued that its construction for the "shifting" limitation must be correct and applicable to Martin's "critical alignment" process because Martin supposedly taught that its "apparent shift"

---

[4] Apple also asks this Court to affirm that Martin is analogous art on the "alternative basis" that Martin is in the same field of endeavor as the patented inventions. RB48 n.8. Presented in a footnote, that argument is waived. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006). Moreover, affirming on that alternative basis would be error, as the Board's decision is reviewed under the APA on the basis on which it was decided. *See In re Lee*, 277 F.3d 1338, 1344 (Fed. Cir. 2002). Not to mention that affirming on that alternative basis here would be especially improper when the Board declined to make this finding (which Apple had also belatedly requested). *See* Appx103 (relying exclusively on the second separate test for analogousness for Martin).

between objects in two images "is dependent on a distance of that object." Appx10038.

But now, just like Apple did when impermissibly "shifting arguments" on analogousness when its original analogousness theory failed, Apple shifts theories in this case again, this time on the "shifting" limitation itself.  On appeal, Apple now concedes that "the 'apparent shift' in Martin refers to the 'distance a point in an image appears to move between images taken from different points of view'—**not the distance between the camera and a point in the image**."  RB61 (citations omitted).  In other words, just like Corephotonics has argued all along, the "apparent shift" that Martin's alignment process uses is merely the distance an object appears to move—not any measure of distance to an object.  *See* BB24–25 (listing citations below); RB51–60 (raising same argument again on appeal).  And Apple has also clarified that it does not—and this Court should not—rely on Martin's depth map and quantitative values as teaching otherwise.  *See* RB60 ("'depth map' and 'quantitative position values" are an irrelevant "distraction"); RB61 ("Apple agrees that Martin's 'depth map' is generated *after* alignment" (emphasis by Apple)); RB61 ("Apple did not rely on Martin's 'quantitative positions values' as teaching the 'shifting' limitation, nor did the Board."); Appx72 (citing Apple's reliance on "depth map" to construe Martin to encompass alignment based on apparent shift); Appx104 (discussing depth map).

There is thus little left for this Court to decide on this issue. The Board erroneously concluded that Martin's alignment process uses apparent shift of an object that is "dependent on distance of that object." Appx104. Apple admits that is not the case. Reversal is thus warranted.

Apple's attempts to further confuse the record and deflect from that inescapable outcome are without merit. Apple's primary attempt at prestidigitation comes with a focus on parallax shift in general as a background concept and its purported relationship to the distance to an object. *See, e.g.*, RB49–52. But there is no dispute that parallax effects *may be* related to distance to an object. Apple attempts to highlight Corephotonics purported concessions on that point, just like the Board did. *See, e.g.*, RB63 n.12; Appx105. But again, that misses the point (just like the Board did when discounting Dr. Saber's testimony). Parallax information and shift *can* be related to distance to an object, but are not always, and only when certain key "additional inputs" (in the Board's words, Appx104) are known (like "d" in the Kobayashi equation). That is precisely the principle that Dr. Saber was discussing in his testimony the Board did not rely upon, and that is precisely what Martin teaches—any "quantitative position values" and depth map (if even relevant)

in its system depend on *further input* of a "known" distance "between the camera a point in the image." Appx15620 at 7:14–17; *see* Appx17775–17781.[5]

This matters because, under any construction allowing indirect reliance on distance to an object, the claimed inventions must perform "shifting" according to *something* (labeled "transformation coefficients" or otherwise) that is "determined based on . . . distance to the object." Appx78. Apple takes issue with Corephotonics' focus on the "transformation coefficients" that the Board discussed to define the "shifting" limitation by identifying what had to be based on distance to an object if the shifting was not done directly thereon. *See* RB57–59. Again, Apple misses the point. Those coefficients are fairly read to be part of the Board's construction, but even if they are excluded, the Board was crystal clear that, if indirectly shifting according to distance to an object, *something* the shifting was done according to had to be itself, in turn, "determined based on . . . a distance to an object." Appx76; Appx78. And that is exactly what is missing here—there is no "transformation coefficient" or anything else in the Martin system according to which shifting is done that is itself based on a distance to an object. That something

---

[5] This is also why there was no purported "forfeit[ure]" of the Kobayashi argument here. RB61. Dr. Saber's point was directly relevant to Kobayashi's equation—parallax is not always related to distance to an object and, if so, requires input of other variables (like the "d" in Kobayashi's equation). *See* Appx17775–17781. Explaining that the "d" in the equation is missing from Martin is just saying a similar thing in a simpler way.

in the Martin system is "apparent shift," which, as Corephotonics discussed and Apple now admits, is not the distance to an object.

Apple also attempts to curtly cure the clear defect in the Board's reliance on Martin to teach the shifting limitation by claiming that a "translation parameter" is used in Martin's alignment process. RB54. But that new point was never relied on by the Board (the decision of which is the subject of this appeal), and it misses its mark anyway—translation parameters are simply "x and y directions," not depth. RB54. Apple even concedes a critical point again when arguing that parallax information in Martin and Martin's apparent shift supposedly equate to critical alignment based on distance to an object. As Apple puts it, the "basic relationship between the amount of parallax shift and the distance of an object" is "confirmed by Martin" explaining "that, using the 'amount of apparent shift of a point in two or more parallax images' *and 'certain other information, such as the distance between the camera and a point in the image,*' 'quantitative position values may be computed for the point'" to then "create a 'depth map for objects in the scene,'" so that "the amount of shift for scene points corresponding to particular objects— which, based on the geometries of parallax is according to the distance to an object— can reveal the depth (distance) for objects throughout a scene." RB52 (quoting Appx15620, 7:13–32) (citing Appx89–90). That is exactly the problem with relying on Martin—to determine actual distance to an object in the Martin system requires

*further input* of a "known" distance "between the camera a point in the image." Appx15620 at 7:14–17. That ***post***-shifting addition of the very distance information required by claims proves that the critical alignment in Martin is not performed according to distance of any object.

At bottom, as Corephotonics explained, the Board and Apple appear to simply equate parallax shift *itself* with distance to an object so that any aligning of images that might potentially eliminate parallax is alignment based on distance to an object. *See, e.g.*, Appx104 ("parallax is based on distance to an object"). That ignores, however, how Martin's crucial alignment process works by using what it defines as "apparent shift," which is indisputably not the distance from a camera to an object. And the claims require shifting according to distance to an object, not according to something that might be, but not necessarily is, merely related to distance to an object. Apple simply reads the claims too broadly. If the claims, for example, required selecting hat size according to height, Apple would read them to encompass even methods of selecting hat size according to head circumference, since height can be (but not necessarily is) correlated to head circumference. That is obviously too far.

In passing (RB64), Apple also attempts to belatedly rely on *Golan* to teach the "shifting" limitation because Golan discloses "a known distance between its two cameras." But Apple failed to make that argument below, and the Board did not rely

on it either (nor could it have).  *See* Appx10038 (Apple relying exclusively on Martin for the shifting limitation); *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016); *see also EmeraChem Holdings, LLC v. Volkswagen Grp. Of Am., Inc.*, 859 F.3d 1341, 1348 (Fed. Cir. 2017).  Indeed, this new argument by Apple also suffers from the same legal flaw as the Board's failure to specifically address how or why a POSITA would have been motivated to combine Golan and Martin's specific non-distance-dependent shifting techniques in the dual-aperture camera system as claimed in the '942 patent—the Board did not (nor could it have) explain how and why a POSITA would have combined with a reasonable expectation of success Golan's disclosure of cameras with set separation distances to alter Martin's critical alignment process to be dependent on distance to an object, rather than apparent shift.  *See, e.g.*, Appx10172 (Apple's burden was to show combination in particular); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1337 (Fed. Cir. 2016); BB59-61 (collecting other relevant cases).

## <u>CONCLUSION</u>

For the foregoing reasons and those presented in Corephotonics' principal brief, the Board's final written decisions in the '487 IPR and the '860 IPR should be reversed or vacated.

Respectfully submitted,

October 24, 2022

*/s/ Marc A. Fenster*
Marc A. Fenster
mfenster@raklaw.com
Neil A. Rubin
nrubin@raklaw.com
James. S. Tsuei
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
(310) 826-7474

*Counsel for Appellant*
*Corephotonics, Ltd.*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATIONS

The undersigned hereby certifies that the foregoing brief complies with the

relevant type-volume limitations of the Federal Rules of Appellate Procedure and

Federal Circuit Rules because the brief has been prepared using a proportionally

spaced typeface using Microsoft Word in 14-point or larger Times New Roman Font

or another proportionally spaced typeface with serifs and includes 5,703 words,

excluding the parts of the brief exempted under those Rules.


October 24, 2022                          */s/ Marc A. Fenster*
                                          Marc A. Fenster
                                          mfenster@raklaw.com
                                          RUSS AUGUST & KABAT
                                          12424 Wilshire Boulevard, 12th Floor
                                          Los Angeles, California 90025
                                          (310) 826-7474


                                          *Counsel for Appellant*
                                          *Corephotonics, Ltd.*